MINNIE G. SMITH, Petitioner, *vs*. PHILLIPS NATIONAL BANK.

Cumberland.   December 28, 1915.

*Mandamus.*       *Notice of desire to withdraw from the Association.*
*Petition.*                    *Shareholders.*

1. When the charter of a national banking association has expired by limitation, it may be extended by vote of the shareholders, with the approval of the comptroller of the currency.
2. When the charter of a national banking association is extended by vote of the shareholders, a non-assenting shareholder may, within 30 days, withdraw, and have his shares appraised and paid for by the bank.
3. The notice of withdrawal given by the shareholder in a national banking association, within 30 days after the extension of its charter, is effective as of the date of the expiration of the original charter.
4. If after the extension of the charter of a national banking association a dividend is declared, a shareholder who demands and receives the dividend waives the right to withdraw.

On report.   Petition for mandamus denied with costs.

This is a petition for writ of mandamus asking for the final determination of the question of law, whether petitioner is entitled as a matter of law to the issuance of a peremptory writ of mandamus as prayed for in said petition.

The case is stated in the opinion.

*J. Blaine Morrison, and Woodman & Whitehouse,* for petitioner.

*Frank W. Butler, and Elias Fields* of Massachusetts Bar, for respondent.

SITTING: SAVAGE, C. J., SPEAR, KING, BIRD, HALEY, HANSON, JJ.

SAVAGE, C. J.   This is a petition for a writ of mandamus, and the case comes before this court on report.   The petitioner was the owner of forty shares in the defendant bank.   The original charter of the bank expired May 20, 1914, and the bank proceeded by amendment of its articles of association, under the provisions of the Act

of Congress of July 12, 1882, to extend its period of succession for a term of not more than twenty years, and on May 21, 1914, the Comptroller of the Currency of the United States granted his certificate of approval of the extension.

By Section 5 of the Act referred to it is provided that "when any national banking association has amended its articles of association as provided in this Act, and the comptroller has granted his certificate of approval, any shareholder not assenting to such amendment may give notice in writing to the directors, within thirty days from the date of the certificate of approval, of his desire to withdraw from said association, in which case he shall be entitled to receive from said banking association the value of the shares so held by him, to be ascertained by an appraisal made by a committee of three persons, one to be selected by such shareholder, one by the directors, and the third by the first two; and in case the value so fixed shall not be satisfactory to any such shareholder, he may appeal to the Comptroller of the Currency, who shall cause a reappraisal to be made, which shall be final and binding; and if said reappraisal shall exceed the value fixed by said committee, the bank shall pay the expenses of said reappraisal, and otherwise the appellant shall pay said expenses; and the value so ascertained and determined shall be deemed to be a debt due, and be forthwith paid to said shareholder from said bank; and the shares so surrendered and appraised shall, after due notice, be sold at public sale." 22 Stat., 163; 4 Comp. Stat., 1913, sects. 9665, 9669. The remainder of the section is immaterial in this case.

June 5, 1914, the petitioner gave written notice to the directors of her desire to withdraw from the defendant association, and in the same writing, informed them who had been selected by her as appraiser on her part. In the meantime, June 1, 1914, the bank declared a dividend from its profits, the greater part of which had been, in fact, earned prior to the expiration of the original charter. June 10, 1914, the cashier of the bank advised the petitioner by letter that it was his impression that her acceptance of the dividend declared and payable after the charter had been extended would bar her withdrawing her interest under the provisions of the statute. Nevertheless, on July 2, 1914, she demanded in writing the payment of the dividend, and it was paid to her representative on the same day.

The directors of the defendant bank have neglected and refused to appoint an appraiser to act with the one selected by the petitioner. And the reason assigned for the refusal is that the petitioner, by demanding and accepting the dividend of June 1, waived or lost her right, under the statute, to withdraw as a shareholder, and to have the value of her shares appraised. This petition for mandamus is brought for the purpose of compelling the appointment of an appraiser by the bank, to the end that the value of the petitioner's shares may be valued, and become a debt of the bank to her.

We think the petition must be denied. The petitioner's contention is that she continued to be a shareholder entitled to dividends until she gave notice of withdrawal June 5, and that, being so entitled, her withdrawal could not affect her right to a dividend previously declared; and, consequently, that as she had a right to the dividend, the acceptance of it after withdrawal was not in any sense a waiver of her withdrawal, or a bar to these proceedings.

We think, both upon reason and authority, that the fallacy of the petitioner's argument lies in the assumption that she continued to be a shareholder until June 5. The life of the charter of a national banking association is limited in time by law. By becoming a shareholder the petitioner's rights and liabilities as such continued only to the expiration of the charter. She could not be compelled to remain a shareholder. Though the statute provided a way by which the charter life could be extended, it was entirely at her option whether she would leave off with the old or go on with the new. The statute gave her the right to elect whether she would continue a shareholder. And that election was required to be made within thirty days after the comptroller had approved the extension. If she did not exercise her option, and elect to withdraw, she continued to be a shareholder. If within thirty days she elected to withdraw, she ceased to be a shareholder and, we think, as of the time when the original charter expired. The point of division between the rights as a shareholder and her right of appraisal as a non-assenting shareholder was the point of time between the old charter and the extension of the charter. She was to elect whether she would go on with the extended charter. If she elected not to do so, it was an election not to do so for any part of the time covered by the extended charter. She could not divide the period. She could

not elect to hold on for a part of the extended period of succession. Such we think was the intendment of the federal statute. A reference to decided cases serves to strengthen our conclusion.

This question arose in *Apsey* v. *Whittemore,* 199 Mass., 65. In that case the bank had failed, and the receiver was attempting to enforce the shareholer's liability against the defendant as a shareholder. The original charter had expired several years before receivership proceedings and had been extended in accordance with the statute, and, within the thirty days provided for in the statute after the approval of the extension, the defendant gave notice of her withdrawal and selected her appraiser and the bank selected one. But the third appraiser was never selected, and no appraisal was had. · The defendant never used or asserted any of the rights and privileges of a shareholder after the expiration of the old charter, and returned a dividend declared afterwards that had been sent to her. The court held that the defendant was not a shareholder under the extended charter. "It is a case," said the court, "where the defendant withdrew and *never became* a stockholder for the extended period of succession."

In *Kimball* v. *Apsey,* 164 Fed., 830, the same question arose upon facts exactly similar. The plaintiff was the same as in the Whittemore case, and the defendant was another shareholder in the same bank. The case says the defendant gave notice of withdrawal within the time limited by statute, and never asserted any rights of a shareholder after the extension. The court said: "By the terms of the statute the defendant ceased to be a stockholder on giving his notice of withdrawal September 5, 1904." The petitioner draws the inference from this language that the notice was given on that date, which was the date of expiration of the old charter. The language might be susceptible of that inference if the context warranted it. But in the light of the other expressions in the case we do not so interpret it. We think the court having said in terms that the notice had been given *within the time* limited by statute intended by the expression used to note the date as upon which the notice became effective.

But however this may be, both of these Apsey cases were taken to the Supreme Court of the United States on error. Both cases were considered together. And the Supreme Court, whose word on

federal questions is decisive, said: "As we view it, when the shareholders made their election to retire at the end of the first twenty year period of corporate organization, and took the steps required in section 5, by giving notice and appointing an appraiser to obtain a valuation of, and payment for, their shares of stock, *they thereby ceased to be shareholders beyond the original twenty-year term* of the life of the corporation and they could neither share its profits, nor be compelled to bear its burdens."

Accordingly, we hold that by force of the statute, the petitioner's withdrawal took effect as of May 20, 1914. When she withdrew, June 5, it was in effect a declaration that she had at no time after May 20 assented to the extension. She had and could claim no rights or benefits which arose to shareholders after May 20. What she did have was the right to have her shares appraised and paid for at their value on May 20. And the fact that there were undivided profits earned before that date would necessarily enhance the value of her shares. If she chose to elect as she did that her rights as shareholder should not continue under the extended charter, she then had no right to a dividend declared after the extension. She could obtain all that belonged to her by an appraisal.

We have treated the question of profits as if the petitioner's claim to a share depended upon the fact alleged in her petition, and admitted to be true, that the greater part of them was earned while she was a shareholder. If this be so, still some of the profits which she demanded and received as a dividend was earned after she ceased to be a shareholder. Besides, the statute contemplates a sale of her shares by auction. Such a sale would determine the value of the shares on May 20, 1914. The transferree would be entitled to all dividends declared after that time. The law, it is said, refuses in the case of a transfer to investigate the question when the dividend was earned. In contemplation of law the net profits are earned at the instant the dividend is declared. This rule is just because the accrued profits and expected dividends enter into the value and price at which the stock is sold. *Richardson* v. *Richardson,* 75 Maine, 575; 2 Cook on Corp., sect. 539.

The remaining question is whether the demand for, and acceptance of, the dividend after the petitioner's withdrawal in any way affected her rights under the withdrawal. We think they did. We think

the withdrawal was waived.   We do not think the withdrawal was irrevocable, at least until the bank acted upon it.   It was competent for the petitioner to withdraw the withdrawal or waive it, if she chose to do so.   It was possible for her to effect a waiver in law, even if she did not intend to do so.   A waiver is ordinarily defined to be the voluntary relinquishment of a known right, a matter of intention.   *Stewart* v. *Leonard,* 103 Maine, 128.   The intention, however is not the secret intention.   It is the intention to be gath-· ered from the language and conduct of the party.  But a waiver in law may be shown by a voluntary act, the legal effect of which is contrary to that intended.   This court said in *Stewart* v. *Leonard,* supra, "waiver is where one in possession of any right, whether conferred by law or by contract, and of full knowledge of the material facts, does or forbears the doing of something inconsistent with the existence of the right, or of his intention to rely upon it. Thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterwards."   And it may be added that under such circumstances; if the renunciation of the waiver would work to the injury or disadvantage of another who relied upon it, the party making the waiver is estopped to deny it. *West* v. *Platt,* 127 Mass., 372.

Applying this rule, how does the petitioner stand?  She gave notice of withdrawal June 5.   That withdrawal, if carried into effect as she desires, will give her the right to recover of the bank the value of her shares on May 20. enhanced necessarily by the increment of undivided earnings to that date.   She will receive the benefit of those earnings.   On July 2, she demanded and received the dividend of June 1, which included those earnings or at least a part of them.   So that if she obtains an appraisal under the statute she will have received, and the bank will have been compelled to pay to her, those earnings twice over.   Under these circumstances, the acts of demanding and receiving the dividend were so inconsistent with the existence of the rights claimed under the withdrawal, and so detrimental to the rights of the bank, that it must be held that the withdrawal was in law waived, and that the petitioner is estopped to claim further rights under her notice of withdrawal.   She had her election.   She might have elected to maintain her withdrawal, and become a creditor of the bank for the value of her shares, or

she might have elected to receive her dividend as a shareholder. She could not enjoy both privileges. She could not be both creditor and shareholder. She elected to take her dividends as shareholder. And she must abide her election, although perhaps she did not foresee the consequences.

*Petition for mandamus denied with costs.*