STATE *vs.* GEORGE PAPAZIAN.

York.    Opinion August 24, 1925.

*In determining an appeal of one convicted of an assault with intent to kill, the only question presented is whether, in view of all the testimony in the case the jury were warranted in believing beyond a reasonable doubt, that the respondent was guilty of the crime charged against him.*

In the present case, a fair trial was accorded the respondent, the jury heard both versions of the story, saw the witnesses, and considered the evidence, without haste, and concluded that, beyond reasonable doubt, the respondent is guilty as charged, and it is not for this Court to say that the evidence for the State was not the more weighty and convincing, and to the degree of dispelling any reasonable doubt.

On appeal.    Respondent was indicted for assault with intent to kill, at the May Term, 1924, Supreme Judicial Court, York County; tried, found guilty, and filed motions for a new trial addressed to the presiding Justice, which were overruled, and an appeal taken.    The only ground urged and relied upon by the respondent was that the conviction was unwarranted on the evidence.    Appeal denied. Judgment for the State.

The case fully appears in the opinion.

*Edward S. Titcomb, County Attorney,* for the State.

*John P. Deering,* for the respondent.

SITTING: CORNISH, C. J., PHILBROOK, DUNN, MORRILL, WILSON, DEASY, BARNES, JJ.

DUNN, MORRILL, DEASY, JJ., concurring in the result.

BARNES, J.    In the city of Biddeford, in our county of York, during the season of 1923—1924, a strike of the workmen of a corporation employing foundrymen and iron moulders and persistent effort to break the strike and keep a crew at work were in progress.    Among the agents employed by the manufacturer was the respondent, George Papazian, an intelligent, industrious, Armenian-born American

citizen, twenty-nine years of age, who by virtue of his education and ability so to serve had for several years, to and including the day of the assault for which he was indicted, been employed by different manufacturing concerns, in New England and New York, to obtain laborers, as needed; and in the city of Biddeford, at the time of the assault, to procure strike breakers, at times to serve as interpreter for them, and to conduct a boarding house, on Main Street, where such laborers were lodged and boarded.

In the course of his employment respondent was entrusted with and carried on his person large sums of money, and for a time prior to the day of the assault had been authorized by the police of Biddeford to carry a revolver. As stated in the brief of respondent's counsel: "Many people in Biddeford were taking sides in the matter. The feelings of the parties were intensely hostile to each other. Times were bad in Biddeford at that time. Five deputy sheriffs were present in Biddeford besides the regular police officers to protect the interests of the various parties and to preserve the peace. The courts had their share of injunction proceedings, contempt proceedings, assaults and batteries, assaults with intent to kill, and indictments for accessories before and after the fact. The records of the courts indicate that there was serious strife in Biddeford."

On the night before the assault which occasioned the indictment in this case, after an altercation in the city street between respondent and three men, strangers to this case, the revolver was taken from respondent by the authorities, and his permit to carry one revoked.

Charles Manoogin, the man who was stabbed, is also an Armenian-born American citizen, who had known respondent before coming to Maine, and who arrived in Biddeford in the Fall of 1923, whether procured by respondent or not being in dispute, and worked as a moulder's helper for the strike-affected company from October 2 until December 22, when the shop closed for ten days. Manoogin then left Biddeford for a time, but returned to that city and his former employment the last of the month, and was discharged on January 2, the day of the assault. During his last stay in Biddeford Manoogin did not live at respondent's hotel. He is represented as a powerfully built man, of slow motion and slow of speech.

The stabbing was done in the early evening, almost directly in front of respondent's hotel. The victim was clothed, above the waist, in shirts, vest, coat, overcoat and muffler: the respondent was lightly

clad, wearing no overcoat, but he had armed himself with a knife, which was identified and exhibited to the jury, and by the justice in his charge termed "a dangerous weapon."

There was a vicious, personal encounter, ending as respondent thrust his knife into Manoogin's neck, and fled,—to Portland and Dover, where he was arrested and returned to Biddeford.

He was tried, convicted, and he appealed. In determining his appeal from the overruling of the motion for a new trial, addressed to the presiding Justice, urging that the verdict is against the evidence, and the weight thereof, this court has to decide only the single question, whether after maturely and fairly considering the weight and sufficiency of the evidence, with all the circumstances attending, the jury were warranted in believing beyond a reasonable doubt, and therefore in declaring by their verdict, that the respondent was guilty of the crime charged against him. *State* v. *Lambert,* 97 Maine, 51; *State* v. *Albanes,* 109 Maine, 199; *State* v. *Mulkerrin,* 112 Maine, 544; *State* v. *Priest,* 117 Maine, 223; *State* v. *Pietrantonio,* 119 Maine, 18, and *State* v. *Dodge,* 124 Maine, 243.

Manoogin could present to the jury no eyewitnesses of the affray, for, as he testified, it took place on the sidewalk in front of respondent's hotel, and there was nobody by except an accomplice of respondent.

The respondent and his witnesses represent Manoogin as a dull, moody fellow, brooding over his failure to receive a moulder's pay, charging his ill-luck to the respondent, and cherishing a growing dislike for the latter. Respondent testified that Manoogin was discharged in the afternoon, and that thereafter, about five o'clock, when they chanced to meet in a coffee house, Manoogin used insulting epithets in addressing him. His version of the lawless encounter is that the two met, almost at respondent's door; that he fled, not to the shelter of his home, but out into the street and across it; that Manoogin overtook him, overpowered him, and that while Manoogin had him down, in the snow of the street, and was proceeding to choke him, he whipped out the knife and made a thrust with it, in self defense.

A fair trial was accorded respondent, the jury heard both versions of the story, saw the witnesses, the bloody clothing of the victim, the unstained glove worn on the hand that dealt the blow, and possibly much that the printed record does not reveal. They considered the

evidence, without haste, and concluded that, beyond reasonable doubt, the respondent is guilty as charged, and it is not for this Court to say that the evidence for the State was not the more weighty and convincing, and to the degree of dispelling any reasonable doubt.

*Appeal denied.*
*Judgment for the State.*

CORNISH, C. J., sat at argument and participated in consultation, but retired before issue of the opinion.

BASSETT, J., was appointed subsequent to argument, but prior to issue of opinion, hence was not one of the sitting Justices but joined in the opinion.