STATE *vs.* BOBB.

York.   Opinion, February 14, 1942.

*Joseph E. Harvey,*

*Harold D. Carroll,* Biddeford, for the State.

*Hayden C. Covington,* Brooklyn, N. Y.,

*Clarence Scott,* Old Town,

*Charles W. Smith,* Biddeford, for respondent.

Sitting: Sturgis, C. J., Thaxter, Hudson, Manser, Worster, Murchie, JJ.

Manser, J.   The respondent was tried upon a joint indictment against him and four other respondents, charging them with assault with a dangerous weapon with intent to kill one Dwight Robinson.

At the close of the evidence, a directed verdict of not guilty

was returned as to the other four respondents. No exceptions were reserved to the charge of the presiding Justice. Counsel for the respondents submitted in writing eighteen requests for instructions to the jury, all of which were substantially given, and counsel were afforded opportunity for further requests. A verdict of guilty was returned.

By a bill of exceptions the respondent undertakes to challenge the action of the trial court in the following matters:

1. Denial of motion for change of venue.
2. Denial of petition for removal of cause to United States District Court.
3. Denial of motion for severance and for separate trial.
4. Denial of motion for continuance.
5-10, inclusive. Exceptions to exclusion or admission of testimony of certain witnesses.
11-12. Exceptions to exclusion of certain exhibits offered.
13. Exception to denial of motion for instructed verdict.
14. Exception to denial of motion for new trial after verdict.

Exceptions four to ten, inclusive, were not argued or briefed, and counsel for the respondent, having informed the court that they were not relied upon, they are regarded as abandoned.

It becomes necessary to determine whether the procedure employed by exceptions thirteen and fourteen is effectual to bring forward for consideration the fundamental question of whether the evidence and the law of the case warranted conviction of the respondent.

At common law, the granting of a new trial in criminal cases rested wholly within the discretion of the presiding justice. In 1909 (P. L., Chap. 184) the legislature created a right of appeal in felony cases from the denial by the presiding justice of a motion for new trial after verdict. This statute is now embodied in R. S., Chap. 146, Sec. 27. In misdemeanors no appeal is provided and the decision of the presiding justice remains final. Here we have a felony case, but the procedure authorized

and controlled by statute is by *appeal* from the decision of the presiding justice, not by *exception* to his ruling. Consequently, this Court is without jurisdiction to review a motion for new trial after verdict on exceptions to the refusal of the trial judge to grant such motion. *State* v. *Kennison,* 131 Me., 494, 160 A., 201.

No appeal having been taken, there arises the question whether the respondent may rely upon his exception to the refusal to direct a verdict. This method, judicially sanctioned, accomplished the result of obtaining a review by the Law Court. *State* v. *Simpson,* 113 Me., 27, 92 A., 898; *State* v. *Bakerwicz,* 119 Me., 122, 109 A., 392; *State* v. *Lamont,* 129 Me., 73, 149 A., 629.

But in *State* v. *Simpson,* supra, in which the respondent was charged with a misdemeanor, it was held that, if both methods were used, the last was a waiver of the first. The reason for this was that the exception to refusal of the presiding justice to direct a verdict brought the case to the Law Court to obtain its decision as to the sufficiency of the evidence. If, however, respondent after verdict presented a motion for a new trial to the presiding justice, he thereby submitted the same question to the final determination of the trial judge, and it would be inconsistent to have a question thus finally adjudicated later passed upon and decided by a separate and distinct tribunal. This rule of waiver has been affirmed in *State* v. *Power,* 123 Me., 223, 122 A., 572, involving misdemeanor; *State* v. *DiPietrantonio,* 119 Me., 18, 109 A., 186; *State* v. *O'Donnell,* 131 Me., 294, 161 A., 802, and *State* v. *Davis,* 116 Me., 260, 101 A., 208, all felony cases. Upon careful consideration, it now appears to the Court that the reason for the rule as originally stated in the misdemeanor case of *State* v. *Simpson,* supra, does not obtain in felony cases. The statute, R. S., Chap. 146, Sec. 27, by its fiat says that the decision of the presiding justice in felony cases on a motion for a new trial is not final and that respondent may, by appeal, submit the question to the Law Court. Exceptions to refusal of directed verdict accomplish

precisely the same result. Therefore, in felonies, two methods are available to bring the issue to the attention of the appellate tribunal. Both are not necessary. It should not follow, however, that if there be error in perfecting the second method, it is fatal to the first.

It is now expressly held that the doctrine of waiver under such circumstances does not apply in felony cases. This effects a change in a rule of procedure. It may be noted, however, that the Court has never allowed a failure to comply with the former rule as laid down in *State* v. *Power,* supra, *State* v. *Di-Pietrantonio,* supra, *State* v. *O'Donnell,* supra, and *State* v. *Davis,* supra, to affect the rights of a respondent but has repeatedly considered the evidence to determine whether injustice would result therefrom.

It may be further noted in the opinion in *State* v. *Simpson,* supra, the court adverted to another rule announced in four early Maine cases but which has long since been modified with judicial sanction in felony cases. The statement reads:

> "This court has frequently held both in criminal and civil cases that the prosecution of a motion for new trial before the presiding Justice is a waiver of all rights of exception," citing *State* v. *Call,* 14 Me., 421; *Cole* v. *Bruce,* 32 Me., 512; *Dinsmore* v. *Weston,* 33 Me., 256; *Ellis* v. *Warren,* 35 Me., 125.

The last cited case was decided in 1852. Since the granting of appeals in all felony cases, however, it has become established practice for the court to consider felony cases on both appeal and exceptions. Instances are found in *State* v. *Friel,* 107 Me., 536, 80 A., 1134; *State* v. *Albanes,* 109 Me., 199, 83 A., 548; *State* v. *Howard,* 117 Me., 69, 102 A., 743; *State* v. *Brown,* 118 Me., 164, 106 A., 429; *State* v. *Mulkern,* 118 Me., 477, 105 A., 177; *State* v. *Sanborn,* 120 Me., 170, 113 A., 54; *State* v. *Dodge,* 124 Me., 243, 127 A., 899; *State* v. *Rogers,* 125 Me., 515, 132 A., 521; *State* v. *Wright,* 128 Me., 404, 148 A., 141; *State* v. *Morin,* 131 Me., 349, 163 A., 102; *State* v. *Dorathy,* 132 Me.,

291, 170 A., 506; *State* v. *Mosley*, 133 Me., 168, 175 A., 307; *State* v. *Cloutier*, 134 Me., 269, 186 A., 604; *State* v. *Sprague*, 135 Me., 470, 199 A., 705; *State* v. *Merry*, 136 Me., 243, 8 A., 2d, 143.

In conformity to the rule as now adopted, the record has been carefully reviewed.

The picture presented is that of the activities and experiences of a group or sect, of which the respondent was one, known as Jehovah's Witnesses. The situation, developed largely in recital by the defense, was, in effect, that the group first made its headquarters in Saco, Maine. The nature of the work carried on was the distribution of literature and magazines, house to house calls, with the playing of phonograph records and electrical transcriptions, and general dissemination of tenets and principles. In addition, there were study periods and conferences, meetings of workers and public gatherings. In Saco and later in Kennebunk, large signs were displayed upon the headquarters building, "Kingdom Hall of Jehovah's Witnesses," "Religion is a Snare and a Racket."

It became apparent that the methods used and the doctrines expounded met the disapprobation of some citizens, and aroused the ire of some members of the American Legion with particular reference to the attitude of the sect as to saluting the flag. It was asserted that the meeting place was subjected to acts of violence, including the throwing of rocks and defacement of the building, and that efforts were made to terrorize the group by threats of personal violence. It was claimed that repeated requests for police protection met with little favorable response. After some months, other headquarters were secured in an old building in Kennebunk, Maine, about ten miles from Saco. Here, comparative quiet existed for a short time, but again the fervor or militancy of the group aroused disfavor, and there were similar experiences as to the place of meeting and as to threats against the group. In addition, it was claimed that for a number of days several cars circulated around the building at various times with accompanying

threats from the occupants. On Memorial Day there was a further demonstration. It was not shown that the individuals who composed the group at Kennebunk were personally assaulted, with one exception.The wife of the respondent claimed that on one occasion literature in her hands was wrested from her and torn up. The group consisted of both men and women and they met almost every evening in the headquarters. Upon their insistent demand to local, county and state police authorities, the locality was at times patrolled, and this had the temporary effect of dispersing the crowd. It was claimed warning was received by the group that, on the evening of Saturday, June 8, 1940, serious trouble might be expected. A number of the men thereupon brought shot guns, rifles and ammunition to the building. Several of the men were stationed at various points about the grounds in the vicinity, where their own persons were not exposed, and some of them were provided with loaded guns. Notwithstanding the warning, a number of women of the sect came to and remained in the building, which had previously been provided with arrangements for switching on flood lights over the area. During the evening, it was represented that there was a procession of cars, which continued at intervals until near midnight. Two of the state police patrolled the district from time to time until then and there were no outbreaks. Shortly after 2 A.M., following a lull of about two hours, an automobile containing four young men stopped somewhere in the road opposite the hall.

From this point, there is material variance in the testimony for the State and for the respondent. Narratively, the testimony of the occupants of the car was to the effect that each one had gone to an all-night diner in the business section of Kennebunk, a short distance away, but not by design or arrangement with the others. There were about a dozen other people in the diner. There was no discussion as to the affairs of the sect and no suggestion as to visiting the premises. After a time one of the four said he had a bottle of gin and asked the others if they would like to have a drink. They went out to the

car, drove a short distance from the business center by Kingdom Hall and into a filling station yard, where three of the men drank the gin. They then started back. The owner of the car was not driving. Just after starting up, this owner said he would drive, and a passenger in the back seat also said that he needed to urinate. The driver stopped the car. The two men got out, one on the side toward Kingdom Hall and the other on the opposite side. Their testimony is that, while the owner of the car was in the act of closing the door, with his back towards Kingdom Hall, a volley of shots was fired. Two slugs penetrated his leg from the rear, one remaining imbedded, the other going through the knee, while a third burned the flesh on the side of the leg. Later it became necessary to amputate the leg. The driver, who was still at the wheel, received a shot in the hip. The glass of the windshield was broken by the gun fire and the side of the car showed evidence of penetration of shots. Robinson, the man who had received the shots in the leg, in some way scrambled into the car, which immediately drove on without Nadeau, the man on the other side of the car. Nadeau scurried after the car without success, but soon found a protecting hedge, behind which he lay until daylight. Such witnesses for the defense as were on the scene agree that the fleeting form of a man was seen chasing the car, and that all parties, including state highway officers who shortly arrived, were concerned about his disappearance.

The divergence as to the facts of the incident by the witnesses in defense was principally to the effect that at least three men got out of the car, advanced towards the building, that one was heard to make threats of a general character, and that rocks were thrown by one or more of the men toward the building.

Respondents expressed the belief that the car was one which had been there on other occasions and earlier on the same night. The claim of identification was a "choking" or "coughing" sound of the motor. There was no other recognition of the car by make, appearance or license number.

Mrs. Bobb testified that she had been instructed by her husband to switch on the flood lights when he called to her for the purpose, or when she heard shots. Hearing shots, the lights were turned on, and the men with the firearms testified that they saw the former occupants of the car rushing back toward it. Bobb, the present respondent, said that he did not aim at any of the men but that he shot at the car with the intent to hit the tires or otherwise disable it. While the night was dark, he had been stationed outside for hours and testified that his vision was adjusted to the darkness and he could see the men. There were lights on the car, though dimmed. Another one of the original respondents said that he shot up in the air in the direction of but higher than the car. There was no admission of shooting by any other respondent or witness, and one respondent asserted that he was armed only with a mop handle. Neither was it claimed that the alleged aggressors were provided with firearms or bludgeons but only with some rocks which they took from their pockets.

The defense was that there was lack of proof that the shots which struck Robinson were fired by Bobb; that the acts of all the members who were provided with firearms were legally justified in protection of their persons and that of their families and in protection of their property.

The record would justify the jury in finding that Bobb with Robinson in range of vision, fired directly at the side of the car where Robinson was standing, and that there was no positive evidence of a shot from any other firearm in that precise direction.

The court instructed the jury, *inter alia*, that it must determine whether, under the facts, danger was imminent or reasonably appeared to be so, and further, whether any possible assailant either had not advanced or else was retiring with his back to the respondents. The jury was further instructed that, if danger was not apparently imminent, the respondent would not be justified in shooting at retreating persons; that as to the asserted intent of Bobb simply to disable the car, the

jury must further determine whether Robinson was within range of the gun fire, and whether that fact was apparent to the respondent, under the rule that a man is responsible for the natural consequences of his act.

The charge of the presiding Justice to the jury as to the applicable principles of law was concededly correct.

At the close of the State's case, proof was lacking that this respondent fired the shots which took effect in the person of Robinson. No request was made for a directed verdict at that time, and deficiency of proof in that respect was supplied by the defense. A number of witnesses testified at length.

A respondent has no cause for complaint that the proof adduced by the prosecution is insufficient where he himself furnishes the necessary evidence. *State* v. *Joy*, 130 Me., 519, 155 A., 34.

The question, therefore, is whether in view of all the testimony, the jury were warranted in believing beyond a reasonable doubt, and therefore in declaring by their verdict, that the respondent was guilty of the crime with which he was charged. *State* v. *Lambert*, 97 Me., 51, 53 A., 879; *State* v. *Priest*, 117 Me., 223, 103 A., 359; *State* v. *Papazian*, 124 Me., 378, 130 A., 129.

Under this rule and upon the entire record the conclusion of the jury was warranted that this respondent did commit an assault with intent to kill and that his defense of justification failed. The exception to denial of motion for directed verdict must be overruled.

Exception to denial of motion for change of venue.

Although the docket entries do not clearly indicate the fact, it was acknowledged by counsel on both sides that this matter was fully heard and argued. The statutory provision relating to change of venue, R. S., Chap. 96, Sec. 24, reads:

"Any justice of the superior court, while holding a nisi prius term, on motion of either party, shall, for cause

shown, order the transfer of any civil action, or criminal case, pending in said court, to the docket thereof in any other county for trial, preserving all attachments."

This statute is declaratory of the common law power of courts of general jurisdiction, to transfer cases from one county to another, when it was necessary to do so in order to procure an impartial trial. *State v. Donnell,* 126 Me., 505, 140 A., 186.

As frankly admitted by counsel for the respondent, "the matter of change of venue rests in the sound discretion of the court." It appears from the entire record and information supplied by briefs of counsel, the only evidence presented was in the form of affidavits of four persons, two of whom were respondents.

Examination of these affidavits confirms the statement of the County Attorney in his brief, "Even if taken as true in their entirety, careful analysis of the affidavits filed by Respondent in support of said motion show, at most, sporadic acts of violence carried out by a few 'hot-heads,' but do not show widespread prejudice throughout the county such as would interfere with the obtaining of an impartial panel, or with the calm, orderly conduct of the trial."

The motion for change of venue alleges that the *Portland Press Herald* of June 10 and the *Boston Post* of June 11 contained statements of an inflammatory nature tending to connect respondents with a foreign agency and to label them as spies. This allegation of cause for change of venue can not be considered because the newspaper articles are not made part of the record and the Court is entirely uninformed as to their actual contents, and further there is nothing in the record disclosing that public hostility was thereby aroused. It would appear, therefore, that the usual rule applies as to matters for determination, addressed to the judicial discretion of the presiding justice, and that his decision is final unless there is an abuse of discretion. The cases cited in *State v. Donnell,* supra, of *Crocker v. Justices,* 208 Mass., 162, 94 N. E., 369, 21 An.

Cas., 1061; *Cochecho R. R.* v. *Farrington,* 26 N. H., 428; *State* v. *Albee,* 61 N. H., 423, 60 Am. Rep., 325, are applicable, and also *State* v. *Chapman,* 103 Conn., 453, 130 A., 899, 905. In the last cited case, the General Statutes, Sec. 6630, provide,

"The judge holding any term of the superior court may upon motion order any criminal case pending in such court to be transferred to the superior court in any other county," 103 Conn., page 469.

Our statute is similar except that it actually specifies that it must be for cause shown. The court said, 130 A., 899, page 905; 103 Conn., page 470:

"The power is one to be exercised with caution, and rests in the court's sound discretion, which is final, unless it appears clearly that it has exercised its discretion unreasonably, or, as it is often expressed, abused its discretion."

"It is within the reasonable discretion of the trial court to grant a change of venue, when it clearly appears that a fair and impartial trial cannot be had in the county where the venue is laid in the indictment. The burden of showing this is upon the mover of the change of venue."

In *Cochecho R. R.* v. *Farrington,* supra, a civil case, the court said, page 445, that to require a change of venue on the ground that a fair trial cannot be had in the county, the fact alleged must be made conclusively to appear.

In *Crocker* v. *Justices,* supra, page 180, appears an interesting discussion of criminal processes, the right of accused to be tried by a jury of the vicinity and the correlative right to be tried elsewhere if only thus could an impartial tribunal be secured. The court concludes with the following:

"That this question never has been presented for determination before (1910) is strong proof that there has been no occasion for the exercise of that power. Such a

motion ought not to be granted upon mere suggestion, nor unless the reason for it is fully established. It is a jurisdiction which should be exercised with great caution and only after a solid foundation of fact has been first established. Manifestly it should be resorted to only in aid of justice, and it should not be permitted to be employed as an instrument of obstruction or as a means of delay."

There appears to be no abuse of discretion and this exception is without merit.

### EXCEPTION TO REFUSAL TO REMOVE THE CASE TO THE FEDERAL COURT.

Before the commencement of the actual trial but after the denial of the motion for a change of venue, a petition was presented in behalf of the then respondents for the removal of the case to the United States District Court under the provisions of Sec. 31 of the judicial code. (U. S. C. A., Title 28, Sec. 74.) The allegations in support of the petition were, in effect, that by reason of conspiracy on the part of public officials under the influence of enemies of the respondents, they are denied the equal protection of the laws and a fair jury trial and cannot defend themselves and their property, their right of freedom of speech, of press and of assembly, and of freedom to worship Almighty God, all of which above named rights are secured to each of them by the Constitution and laws of the State of Maine. It was also alleged that respondents were being prosecuted for acts which they say were in the exercise of the right of self-defense and the defense of property, and if the prosecutions are permitted to stand, they will be deprived of their civil rights.

It was also asserted in the petition that it was impossible for the respondents to secure a fair trial because of prejudice and publicity given the case and further that the jury had been selected in such manner as to deprive the respondents of their liberty without due process of law. It appears, however, that

the last assertion is not relied upon as the jury at the time had not been selected.

Respondent appears to have taken no action in the Federal Court under Sec. 32 of the judicial code, which provides that, when all the acts necessary for removal have been taken, the District Court may remove the proceedings in term time or vacation by a writ of habeas corpus.

In presenting the petition there was misconception as to the scope and purpose of the invoked federal statute. It is only when the Constitution and laws of the state deny or prevent the enforcement of equal rights secured to a party to a cause by the Constitution or laws of the United States that the cause may be removed. Here the petition itself explicitly avers that all of the civil rights of the respondents are secured to them by the Constitution and laws of the State of Maine. Complaint of conspiracy, prejudice and adverse publicity cannot avail as ground for removal. *Texas* v. *Gaines,* 2 Woods (U. S.), 342, Fed. Cas. No. 13847; Ex p. Wells, 3 Woods (U. S.) 128, Fed. Cas. No. 17386; *Kentucky* v. *Powers,* 201 U. S., 1, 26 S. Ct., 387, 50 Law Ed., 633, 5 A. & E. Ann. Cas., 692 and note pp. 704-6; U. S. C. A. Title 28, Sec. 74 and notes of decisions thereunder pp. 545-50. This exception must be overruled.

#### EXCEPTION TO DENIAL OF MOTION FOR SEPARATE TRIALS.

The record shows that before trial and after denial of motion for continuance, an oral motion for severance was made, denied and exception taken. Reliance is placed in respondent's brief on the opinion in *Brady* v. *U. S.* (Iowa) 39 F., 2d, 312. That case, however, is in full accord with the great weight of authority. It holds that the grant or denial of a motion for separate trials rests in the trial court's discretion and is reviewable only for abuse; that a denial of separate trials when it is not clearly shown that defenses were necessarily antagonistic or that the defendants would be prejudiced by joint trial is not error; further that what constitutes abuse of discretion in denying separate trials depends upon the whole situation in

each case. Here it is definitely shown that all of the respondents were engaged in a common enterprise. Their defense was that they were unitedly endeavoring to protect their persons and property and to repel invaders. The offense charged was committed when all were present. They were all witnesses for each other and for the present respondent. It was urged that this respondent was prejudiced when, at the close of the joint trial, the court instructed the jury to return not guilty verdicts as to the other respondents. The record, however, shows that the court used great care in instructing the jury with reference to this incident. The exception must be overruled on the ground that there was no abuse of discretion. *U. S.* v. *Ball,* 163 U. S., 662, 16 S. Ct., 1192, 41 L. Ed., 300; *State* v. *Soper,* 16 Me., 293, 33 Am. Dec., 665; *State* v. *Conley,* 39 Me., 78, at page 92; *Commonwealth* v. *Bingham,* 158 Mass., 169, 33 N. E., 341.

### EXCEPTION TO EXCLUSION OF CERTAIN PHOTOGRAPHS AS EXHIBITS.

All exceptions to the admission or exclusion of testimony are waived save as to certain photographs. Exhibits Nos. 10, 11 and 12 were photographs purporting to show some defacement of Kingdom Hall in Saco in October, 1939. Respondent was on trial for what occurred on June 9, 1940, a considerable time after the sect had transferred their activities to premises in Kennebunk. It was claimed that the exhibits were admissible to show the state of mind of the accused with respect to threatened attacks.

Exhibits Nos. 8 and 9 were two of a series of five photographs of Kingdom Hall in Kennebunk. One was withdrawn. Two, which were taken just before the events of June 9, 1940, were admitted, while Nos. 8 and 9 were excluded. The record discloses that the reason for exclusion was because they were taken after the event, and portrayed a changed condition unconnected with that event.

The rule of practice is firmly established here as elsewhere, that the admission or exclusion of photographs is within the

discretion of the court, not to be disturbed on exceptions unless abused. It is a general rule that photographs offered as exhibits must show conditions existing at the time of the occurrence. There is nothing to justify the finding of an abuse of discretion. *Rodick* v. *M. C. R. R.*, 109 Me., 530, 534, 85 A., 41, and cases there reviewed.

Upon full consideration the court is satisfied that the respondent received a fair and impartial trial, that the exceptions show no prejudicial error, and that the verdict was justified.

> *Exceptions overruled.*
> *Judgment for the State.*

HUDSON, J., dissenting in part.

While I concur in the result, I do not join in the majority opinion, because, in connection with the discussion of procedure therein, I do not assent to its statement "that the doctrine of waiver under such circumstances does not apply in felony cases."

For many years it has been well-established law in this state, both in misdemeanor and felony cases as well as in civil case procedure, that where an exception is taken to a refusal by the presiding justice to direct a verdict for the defendant and later, after verdict, a motion is addressed to the presiding justice to set the verdict aside, the exception is waived. *State* v. *Simpson,* 113 Me., 27, 92 A., 898 (misdemeanor); dictum in *State* v. *Davis,* 116 Me., 260, 101 A., 208 (felony); *State* v. *Di Pietrantonio,* 119 Me., 18, 109 A., 186 (felony); *State* v. *Power,* 123 Me., 223, 122 A., 572 (misdemeanor); *Mills* v. *Richardson,* 126 Me., 244, 137 A., 689 (civil case); *State* v. *O'Donnell, et als.,* 131 Me., 294, 161 A., 802 (felony); *Symonds* v. *Free Street Corp.,* 135 Me., 501, 200 A., 801, 117 A. L. R., 986 (civil case); *Inhabitants of Fort Fairfield* v. *Inhabitants of Millinocket,* 136 Me., 426, 12 A., 2d, 173.

Until now this court has made no distinction in this respect between misdemeanors and felonies. With reference to both,

decision has been that the filing of the motion after verdict addressed to the presiding justice constitutes a waiver of the exception to the refusal to direct a verdict. The majority opinion adheres to this principle as to misdemeanors, denies it as to felonies, and takes no position, as it was not necessary to take such, with reference to civil cases. With relation, however, to civil cases, I think the latest pronouncement of this Court may be found in *Inhabitants of Fort Fairfield* v. *Inhabitants of Millinocket,* supra, on page 428, where the court said:

> "The exception taken to the denial of the defendant's motion for a directed verdict and the general motion for a new trial raise the same question. That exception must be regarded as waived."

Also, as to waiver by motion for new trial, it is stated in Sec. 351 of 4 C. J. S., on page 769:

> "With respect to waiver by implication the general rule is that a party cannot make a motion for a new trial based on points raised by his bill of exceptions without waiving the exceptions, or, at least without expressly reserving them."

The annotator states in 17 A. L. R., on page 929:

> "And in Maine, it has been held that the refusal of the court to direct a verdict in favor of the accused is waived by the filing of a motion to set aside the verdict, the reason being that the same question, i.e., the sufficiency of the evidence, is raised by both," citing the Simpson, Davis, and Di Pietrantonio cases, supra.
>
> The O'Donnell case, supra, had not then been decided.

The effect of the majority opinion is to overrule the decisions on the point here discussed in *State* v. *Di Pietrantonio,* supra, and *State* v. *O'Donnell et als.,* supra, both felony cases in which the opinions, written by former Chief Justices of this Court, were signed unanimously by the members of the Court.

The reason advanced for overruling these cases is that in felony cases there is a statutory right of appeal to the Law Court from the refusal of the presiding justice to set the verdict aside, while formerly there was none; but the statute giving the right of appeal was enacted prior to the decisions above cited. It is not to be assumed that this statute was not then considered by the Court. That it was not overlooked in the Di Pietrantonio case, *supra*, is clear, because in the opinion specific mention is made of it. So, too, in the Simpson case, *supra*. Although the Simpson case related to a misdemeanor rather than a felony, the court stated broadly: "This court has frequently held both *in criminal and civil cases* that the prosecution of a motion for new trial before the presiding Justice is a waiver of all rights of exception . . . and the practice is now well settled." (Italics mine.) While the statement was dictum as to other than misdemeanors, yet it evidences the then opinion of the court that there was no distinction as to waiver between felonies and misdemeanors as now held by the majority of this Court.

The reason for waiver given in the decision in the Simpson case, *supra*, is stated in these words:

> "The only ground on which the verdict could be set aside was that the evidence was insufficient to support it; which was the precise point raised in the first request (meaning motion to direct a verdict for the respondent). If the evidence was sufficient the direction of a verdict had been properly refused. If the evidence was insufficient the verdict should have been ordered. It follows therefore that exactly the same question was presented to the determination of the presiding Justice by the motion, which would have been presented to the Law Court, on the first exception, and having failed on the motion the respondent cannot now be allowed to revive his exceptions and seek another tribunal."

Chief Justice Cornish, who had written the opinion in the

Simpson misdemeanor case, *supra*, also wrote the opinion in the Di Pietrantonio felony case, *supra*, and in the latter said: "The exception to the refusal of the court to direct a verdict in favor of the respondent was waived by the filing of the motion to set aside the verdict after it was rendered. Precisely the same question was raised by both," citing the Simpson case and also *State* v. *Davis*, supra, which, by way of dictum in a felony case, had followed *State* v. *Simpson*, supra.

The reasoning in these cases cited would seem to be as sound now as then in holding that the conduct of the defendant in presenting the same question a second time to the same presiding justice constituted a waiver of the exception taken to the former ruling. By such conduct he abandoned his right to prosecute his exception previously taken.

In the Simpson case, *supra*, two exceptions went to the Law Court, the first one being to the refusal of the presiding justice to direct a verdict for the defendant and the second to the refusal of the presiding justice to set the verdict aside. Both exceptions were overruled.

As to the first exception the Court said on page 28, 113 Me., page 899 of 92 A.:

"Had the respondent stood upon his legal rights in prosecuting that exception he could have brought the case to the Law Court, and obtained its decision and opinion as to the sufficiency of the evidence. But subsequently the respondent abandoned that remedy and that course of procedure, and sought the decision and opinion of the presiding Justice upon precisely the same question. He filed a motion asking the presiding Justice to set aside the verdict."

The second exception was overruled as the court said on page 29, 113 Me.:

". . . because, as we have already said, exceptions do not lie to the refusal of a presiding Justice to grant a new

trial, it being a matter addressed to his judicial discretion."

This language was used in connection with a misdemeanor case, but the fact that in felony cases there is a right of appeal from the refusal of the presiding justice to set the verdict aside makes it nonetheless an abandonment or waiver of an exception taken to the previous ruling of refusal to direct a verdict. It is the adoption of the second procedure after verdict, whether single- or double-barrelled, that works the waiver. The fact that in felony cases the defendant has two bites at the cherry, first in having the presiding justice hear his motion to set the verdict aside and second, right of appeal from his decision, instead of having to rely only upon exceptions to the decision of the presiding justice refusing to direct a verdict, makes the adoption of such procedure, with right of appeal added, nonetheless a waiver of the exception to the refusal to direct a verdict.

The waiver takes place when the motion to set the verdict aside is filed, not later when it is ruled upon. The filing of the motion evidences the intention to abandon and is the conduct founding the waiver.

"The exception . . . was waived by the filing of the motion to set aside the verdict after it was rendered." *State* v. *Di Pietrantonio*, supra, on page 19 of 119 Me., page 187 of 109 A.

"The right to be heard on his exceptions, which he deliberately and completely waived when he chose to prosecute a motion for a new trial, cannot be restored merely because his motion proved ineffectual." *State* v. *Power*, supra, on page 224 of 123 Me., page 572 of 122 A.

"*Filing the motions* operated as a waiver of exceptions to the refusal to direct verdicts . . ." (Italics mine.) *State* v. *O'Donnell et als.*, supra, on page 295 of 131 Me., page 803 of 161 A.

The respondent, upon refusal of the motion to direct a verdict, had an option then to take and prosecute his exception before the Law Court, or later, after verdict of guilty, to file a motion to set it aside. As stated in the Simpson case, *supra:* "He must exercise his option and take one course or the other. He cannot take both. And having exercised his choice he is bound by the result."

A right abandoned or waived cannot be regained. *Libby* v. *Haley*, 91 Me., 331, 333, 39 A., 1004. Here it is claimed that the respondent, not appealing from the refusal of the presiding justice to order a new trial, as he had the right to appeal (instead thereof he excepted, a right not given by statute), could then, as a result of his own error of procedure, resort to the right of exception which theretofore he had abandoned and waived. No such right of resurrection of a dead exception is given by statute or otherwise, but such is now given in the case of a felony under this majority opinion.

An important element in the doctrine of waiver is intention to waive. It is not, however, a secret intention but "the intention to be gathered from the language and conduct of the party." *Smith* v. *Phillips National Bank*, 114 Me., 297, 302, 96 A., 217. But even if here the actual intention were to be discovered, would not the fact that there is in felony cases a statutory appeal from the refusal of the presiding justice to order a new trial make it all the more likely that there exists an actual intention to abandon the exception, for there would be not only the right to have the same question passed upon by the presiding justice on the motion for a new trial but to have the Law Court review that decision? The fact that in the case of a felony there is a statutory right of appeal, it would seem, therefore, instead of tending to indicate an actual intention to retain the exception, would naturally and with good reason indicate quite the contrary, for if by appealing he could have decision by the Law Court upon the latter ruling of the presiding justice, it would be futile and absolutely unnecessary then to prosecute his exception, where both the exception and the

appeal raise the same question. The fact that after the decision by the presiding justice denying a new trial he does not appeal but erroneously excepts to that ruling does not alter the situation. It doesn't seem logical nor legally possible that a right once lost by voluntary election can be revived by the possessor's own later procedural error. It is not a case of conditional waiver but one absolute.

In the majority opinion it is stated: "Since the granting of appeals in all felony cases, however, it has become established practice for the court to consider felony cases on both appeal and exceptions." And then is cited a list of cases. I think, however, an examination of these cases shows that in only three of them, namely, *State* v. *Brown*, 118 Me., 164, 106 A., 429; *State* v. *Mulkern*, 118 Me., 477, 105 A., 177, and *State* v. *Rogers*, 125 Me., 515, 132 A., 521, was an exception taken to the refusal to order a verdict. In all the other cases the exceptions were to rulings of the presiding justice that had to do with the admissibility of evidence, instructions given to the jury or refused to be given, or as to conduct of the trial, none of which raised the same question before the Law Court as that raised in the appeal. This I consider quite different from an exception to a refusal to order a verdict and an appeal from a refusal of a presiding justice to order a new trial, in both of which the same question is raised, which fact is instrumental in establishing the waiver.

Furthermore, all of the cases mentioned differ from the instant case in that in the latter no appeal was taken.

In the Brown, Mulkern, and Rogers cases, *supra* (the Mulkern case up on exceptions to refusal to order a verdict, to grant a motion in arrest of judgment, and on appeal under R. S. 1916, Chap. 136, Sec. 28, and the Rogers case up on exception to refusal to order a directed verdict and on motion for new trial on the ground of newly discovered evidence), while the exception was overruled in each case, there was no discussion of procedure, that is, as to whether the exception was properly presented, while in all of the cases hereinbefore mentioned in this

opinion where there was discussion it was unanimously held that because of waiver such exception could not properly come to the Law Court, and the latest expression to that effect in felony cases is found in *State* v. *O'Donnell,* supra, a recent case succeeding the Brown, Mulkern, and Rogers cases, *supra.*

The fact referred to in the majority opinion, that in many cases where waiver has been held, the Court, nevertheless, has. reviewed the merits, in no way affects the reasoning of its decision on the doctrine of waiver. Here in this case we could, if we saw fit, adopt the same practice without overruling well-established law. This practice I prefer to follow. The applicability of Chap. 86 of P. L. 1941 I do not discuss for I do not deem it necessary.

So I concur in the result, but for reasons stated, do not sign the majority opinion.

WORSTER, J., dissenting in part.

I have reached the same conclusion as that reached by Mr. Justice Hudson, and concur in his opinion.