STATE
*vs.*
CHARLES LUMBERT
AND
WALTER HUTCHINS

Cumberland.   Opinion, August 7, 1956.

*Frederic Sturgis,*
*Arthur Peabody,* for State.

*David Klickstein,*
*Basil Latty,* for defendants.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, BELIVEAU, TAPLEY, JJ. MURRAY, A. R. J. CLARKE, J., did not sit.

BELIVEAU, J. On exceptions. These respondents were indicted at the May Term 1955 of Cumberland County Superior Court for assault and battery on one Ted Adrien; tried together at that term and found "Guilty."

Six exceptions were taken by the respondents. One of the exceptions was to the refusal of the presiding justice to direct a verdict of "Not Guilty" and another to grant their motion for a new trial.

The State argues that exceptions to the denial of a motion for a new trial is not proper procedure and that an appeal to this court is the only course opened to the respondents. It further argues that a motion for a new trial is a waiver of the exception and for that reason that exception is not properly before the court for consideration.

A motion for a new trial is not, in felony cases, a waiver of the exception taken to the refusal of the presiding justice to direct a verdict.

In *State* v. *Bobb,* 138 Me. 242 at Page 246, the court says,

> ". . . that the doctrine of waiver under such circumstances does not apply in felony cases."

and that this rule

> ". . . has long since been modified with judicial
> sanction in felony cases."

and again

> "Since the granting of appeals in all felony cases,
> however, it has become established practice for the
> court to consider felony cases on both appeal and
> exceptions."

It necessarily follows that if the respondents had complied with the statutes and filed an appeal from the ruling denying their motion for a new trial, that that motion and their exceptions would be properly before this court.

It follows again, that an exception to the denial of a motion for a new trial does not bar the respondents from having the full benefit of the exceptions taken to the court's refusal to direct a verdict in their favor; it having been determined that a felony was committed.

The State's case depended on a large part, if not wholly, on the testimony of one Alfred Adrien, referred to in the indictment as Ted Adrien, who lived in Auburn, Maine, at the time of the assault on him by the respondents, on March 19, 1955, at Brunswick. On this day Adrien called on a Mrs. Lavoie, at her request, to deliver some needles she had asked him to bring on this day, a Saturday morning.

Adrien testified he had been at Mrs. Lavoie's about ten minutes when the two respondents appeared and requested the payment of rent from Mrs. Lavoie. It is in evidence that one, or both, of these respondents had been drinking and asked Mrs. Lavoie to serve them some liquor. The younger respondent testified that he was sick and needed the liquor. They each consumed a drink of whiskey and after that was consumed asked for more. They were again each served a drink and Mrs. Lavoie poured one for herself, according to her testimony. This drink was, as she

says, "grabbed" by one of the respondents, Walter Hutchins. Some argument followed and according to Adrien's testimony, she was slapped by Hutchins, the younger of the two respondents. Adrien interceded and asked the respondents to stop. He testified that immediately after that he was struck by one of them and, as he says, "I crybabied and told them I was sick and to leave me alone." He attempted to leave the camp but was stopped by one of the respondents. He then picked up an empty beer bottle from the floor and struck Hutchins on the head, which bottle broke in his hand. He testified they then threw him on the ground, jumped on him and called him vile names. After pleading with them to leave him alone, he was thrown to the floor and the respondents attempted to rifle his pockets. He managed to reach his automobile and, he says, was followed by the respondents, who again assaulted him and went through his pockets.

Some of Adrien's testimony is corroborated by Mrs. Lavoie, the State's witness.

The respondents, in their defense, testified they came to the Lavoie cottage on legitimate business and had not been drinking. While engaged in conversation with Mrs. Lavoie, Adrien out of a clear sky and without any reason or provocation, so they testify, picked up an empty beer bottle, from the floor, threw it at Hutchins and caused serious injury to Hutchins' head. Their position is that whatever injuries were inflicted by them on Adrien was in self-defense.

What happened at the camp this Saturday morning was essentially one of fact and one peculiarly within the province of the jury to decide. We have before us nothing but the cold printed record while the jury had an opportunity, not given this court, to observe the behavior and attitude of all the witnesses while they testified under oath. The opportunity to observe, at close range, witnesses, while they testify under oath, on both direct and cross-examination, is

apt to and should influence the jury in weighing their testimony.

There was sufficient evidence, if believed by the jury, to justify the conviction of the respondents. The defendants take nothing from this exception.

The remaining exceptions are four in number. Exceptions 3, 5 and 6 are to the refusal to give instruction requested by the respondents and the fourth exception to part of the charge. The exceptions involve the law of self-defense and will be disposed of by consideration of the fourth exception taken to that part of the charge where the justice instructed the jury that:

> "If a person has a reasonable apprehension that he is in danger of bodily injury he has a right to defend himself, but he should retreat when he can safely do so."

Restatement of the Law of Torts, Vol. I, Page 139 says:

> ". . . one whom another threatens to attack may stand his ground and repel the attack with any reasonable force which does not threaten death or serious bodily harm, although he realizes that he can safely retreat and so avoid the necessity of using self-defensive force. But the interest of society in the life and efficiency of its members and in the prevention of the serious breaches of the peace involved in bloody affrays requires one attacked with a deadly weapon, except within his own dwelling place, to retreat before using force intended or likely to inflict death or serious bodily harm upon his assailant, unless he reasonably believes that there is any chance that retreat cannot be safely made. But even the slightest doubt, if reasonable, is enough to justify his standing his ground, and in determining whether his doubt is reasonable every allowance must be made for the predicament in which his assailant has placed him."

See also *State* v. *Cox*, 138 Me. 151.

The ancient doctrine that one must "retreat to the wall" has been discarded by our courts and it is now the almost universal rule that in case of assault and battery the assaulted person may stand his ground and defend himself just as long as he uses no more force than necessary to repel the attack. This is the law in the state. *State* v. *Carver,* 89 Me. 74.

That part of the charge was prejudicial to the rights of the respondents and exception four must be sustained.

*Exceptions 1 and 2 overruled.*
*Exception 4 sustained.*