**STATE of Maine**

v.

**Chandler LITTLEFIELD.**

Supreme Judicial Court of Maine.

July 11, 1978.

David M. Cox, Dist. Atty., Gary F. Thorne (orally), Asst. Dist. Atty., Bangor, for plaintiff.

Paine, Lynch & Weatherbee by Peter M. Weatherbee, Bangor (orally), for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

ARCHIBALD, Justice.

Chandler Littlefield has appealed from a judgment entered in Penobscot County Superior Court, after having been found guilty by a jury of ten counts of kidnapping with the use of a dangerous weapon,[1] and two counts of robbery with the use of a dangerous weapon.[2]

Appellant asserts first that the trial Court erred in denying his "Motion to Sever" the individual counts of the indictment

---

1. 17–A M.R.S.A. § 301, elevated to a Class A offense by subsection 4 of 17–A M.R.S.A § 1252.

2. 17–A M.R.S.A. § 651.

for trial purposes and, secondly, he challenges the sufficiency of the evidence offered in support of each count.

We deny the appeal.

## FACTS

On or about January 25, 1977, the appellant and an accomplice, Keith Parkinson, escaped from the Maine State Prison and forced one Frederick Bernard of Thomaston at gunpoint to drive them to the Bangor-Orono area. After spending the night in Bernard's car, they proceeded to the Old Town area where they searched for another car.

At approximately 6:00 a. m. they succeeded in gaining admittance to the St. Peter house in Old Town where, shortly after their arrival, Bernard explained the situation to Mrs. St. Peter. At this time the only other occupant of the house was Mrs. St. Peter's daughter, Pamela. During the course of their stay the appellant displayed a handgun with a silencer attached and, at some time, threatened to shoot them all if anyone made a false move. At one point the appellant and Bernard went to a store to get gas and beer, appellant remaining in the car with a gun while Bernard paid the bill. Prior to entering the store, Bernard was instructed not to tip anyone off or to attempt to escape because otherwise Mrs. St. Peter and her daughter would be hurt back at the house. After Littlefield returned to the house and before he and Parkinson left for Millinocket, Mrs. St. Peter was ordered to gather all the guns in the house, which she did, leaving the guns in the kitchen area of her house. The three victims were then tied to a bed. Appellant and Parkinson then departed in Bernard's car. Upon freeing himself, Bernard observed that the guns left in the kitchen were gone.

Later that same afternoon the appellant and his accomplice arrived in Millinocket. Eugene Barr, Jr., a brother of Keith Parkinson, testified that he came home from school, accompanied by Beth Harvey and Linwood Bubar, to discover his brother waving a .22 revolver and claiming all three were "now hostages." Later Paul Brown, Shane Barr and Charles McGreevy arrived at the Barr home. All of these persons were ordered at gunpoint to sit quietly or risk being shot. Paul Brown testified that the appellant said if anything went wrong he would be the first one shot. At approximately 5:00 p. m. all of the victims except Eugene Barr, Jr., were taken to the cellar and tied up with instructions not to leave the cellar unless they wanted Barr, Jr., killed. The appellant and his accomplice then departed on a snowsled with Eugene Barr, Jr., and a "280 rifle" which was owned by Barr, Sr.

At approximately 6:00 p. m. that afternoon Mrs. Pelletier, of 63 Cottage Road, Millinocket, heard a knock at her door. The appellant and his accomplice forced their way into the house despite Mrs. Pelletier's efforts to repulse them. Both men were armed. After Parkinson left the house to hide the snowsled, the defendant observed the police apprehending Parkinson as he attempted to hide the vehicle. The appellant then seized Mrs. Pelletier and, with a gun in her back, pulled her into a closet, instructing her to keep quiet because the appellant could see that the police were making a house to house search. Soon the police came to the house, knocked on the door and, when there was no answer, they departed. Later Mrs. Pelletier's uncle came to the door to inquire if everything was in order. She answered the door at gunpoint and assured her caller verbally that everything was satisfactory. Nevertheless, Mrs. Pelletier was able to make certain inaudible gestures which alerted her uncle otherwise. Later that evening Mrs. Pelletier was able to escape via a cellar exit and the appellant was apprehended in the Pelletier home around 11:30 p. m.

## I

On August 18, 1977, the defendant filed a pre-trial motion to sever, arguing that both prejudice and confusion in the minds of the jury would result if all of the charges against him were tried together. The trial Court granted severance of only one count,

which alleged rape. The Court ordered that the remaining counts be tried together.

"The grant or denial of a motion for separate trials rests in the trial court's discretion and is reviewable only for abuse." *State v. Bobb*, 138 Me. 242, 255, 25 A.2d 229, 236 (1942). This rule was not changed by the adoption of Rule 14, M.R.Crim.P. *See* Glassman, Rules of Criminal Procedure, § 14.1.

■ Appellant's conduct from Thomaston to Millinocket was part of a continuing course of action designed to avoid police detection and thus facilitate escape. Nevertheless, the appellant argues that it was an abuse of discretion to deny severance because the proof of one crime would tend to corroborate the evidence of another. The appellant points to no specific evidence of prejudice, however, but makes only a general assertion that it would be impossible for the jurors to avoid cumulating the evidence. This is not a persuasive showing of abuse of discretion. *Cf. State v. Coty*, Me., 229 A.2d 205, 214 (1967).

■ Furthermore, separation of trials would not necessarily prevent admission of evidence of the other crimes when that evidence demonstrates the existence of appellant's common scheme or plan to avoid apprehension for the prison escape. *See* Rule 404(b), M.R.Evid., and commentary in Field & Murray, *Maine Evidence*, § 404.3; *see also* 8 *Moore's Federal Practice*, § 8.05(2) (2d ed. 1976). Therefore, the joinder of offenses was no more prejudicial to the defendant than if the Court had granted separate trials for each count.

## II–A

Appellant contends that the trial Court erred in denying his motion for acquittal on Counts Two and Six. He asserts that the State failed to present evidence from which a jury could find beyond a reasonable doubt that he committed robbery with the use of a firearm against either Francis St. Peter or Eugene Barr, Jr. 17–A M.R.S.A. § 651(B)(2). Appellant argues that on both counts the State failed to produce any evidence from which the jury could conclude that he acted with the requisite "intent to deprive." [3]

■ Rule 29(a), M.R.Crim.P., mandates granting a motion for acquittal only "if the evidence is insufficient to sustain a conviction." In deciding such a motion, the trial judge must assume the truth of the evidence adduced in support of the state and draw all reasonable inferences therefrom which favor the state. *State v. Blier*, Me., 371 A.2d 1091, 1092 (1977); *State v. Matheson*, Me., 363 A.2d 716, 722 (1976). The trial judge is not to substitute his judgment of the evidence for that of the jury. *State v. Call*, Me., 322 A.2d 64, 66 (1974).

■ The Justice below found that the evidence supported an inference of appellant's intent to deprive. The testimony clearly established that the appellant and his accomplice not only took weapons from Virginia St. Peter before leaving her house, but also carried them away when they fled to Millinocket. As to Count Six, there was testimony that the defendant and his accomplice seized a rifle belonging to Eugene Barr, Sr., when they left the Barr residence. The appellant argued that this evidence did not show the requisite "intent to deprive" permanently, but it was ruled that this was a question for the jury. This ruling was clearly proper.

## II–B

Littlefield was found guilty of ten counts of kidnapping and one of criminal restraint.

---

3. "Intent to deprive" is defined in 17–A M.R.S.A. § 352(3) as follows:

"3. 'Intent to deprive' means to have the conscious object:
A. To withhold property permanently or for so extended a period or to use under such circumstances that a substantial portion of its economic value, or the use and benefit thereof, would be lost; or
B. To restore the property only upon payment of a reward or other compensation; or
C. To dispose of the property under circumstances that make it unlikely that the owner will recover it or that manifest an indifference as to whether the owner will recover it."

After verdict a motion for judgment of acquittal was seasonably filed and denied. Rule 29(b), M.R.Crim.P. Appellant contends that although the evidence showed that all the victims were restrained in a manner made criminal by 17–A M.R.S.A. § 302, the evidence did not support his convictions for kidnapping under § 301.[4]

The indictments all charged that appellant's intent was to use the individual victims as shields or hostages.[5] The motion for acquittal was premised on the argument that there was no evidence from which such intent could be found, since the victims were restrained solely to prevent them from disclosing the whereabouts of the escapees to the police.[6]

■ In reviewing this ruling we adhere to the familiar standard: The total evidence and all reasonable inferences derived therefrom must be taken in the light most favorable to the state, and the court is not to substitute its judgment on the facts for that of the jury. Assuming that the primary goal of Littlefield's actions was to escape detection, the jury could nonetheless find that, as a means to this end, the appellant used, or intended to use, his victims as hostages, provided there was some evidence that would fit within the meaning of that term.

The word "hostage" is not defined in the Maine Criminal Code. The trial Court adopted the following definition from the New Mexico Supreme Court:

"[T]he term hostage . . . implies the unlawful taking, restraining or confining of a person with the intent that the person, or victim, be held as security for the performance, or forbearance, *of some act by a third person.*" (emphasis supplied).

*State v. Crump,* 82 N.M. 487, 484 P.2d 329, 334–35 (1971). This definition was adopted by the North Carolina Court of Appeals in *State v. Lee,* 33 N.C.App. 162, 234 S.E.2d 482 (1977), interpreting a kidnapping statute similar to the Maine statute.[7] No other definition appears to have been used in kidnapping cases.

---

4. 17–A M.R.S.A. § 302 defines criminal restraint as follows:

   "1. A person is guilty of criminal restraint if:
   A. He knowingly restrains another person; or

   . . . . .

   2. 'Restrain' has the same meaning as in section 301."
   Kidnapping is defined in 17–A M.R.S.A. § 301 as follows:
   "1. A person is guilty of kidnapping if either:
   A. He knowingly restrains another person with the intent to

   . . . . .

   (2) use him as a shield or hostage;

   . . . . .

   (5) facilitate the commission of another crime by any person or flight thereafter
   . . . ."
   "2. 'Restrain' means to restrict substantially the movements of another person without his consent or other lawful authority by:

   . . . . .

   C. Confining him for a substantial period either in the place where the restriction commences or in a place to which he has been moved."

5. The ten kidnapping indictments were all phrased as follows:

   ". . . Chandler Littlefield did knowingly restrain [name] with the intent to use [her/him] as a shield or hostage, and while *doing so Chandler Littlefield used a dangerous weapon, a firearm,* against said [name]."
   The charges referred to the following people: Count 1—Frederick Bernard; Count 3—Virginia St. Peter; Count 4—Pamela St. Peter; Count 7—Eugene Barr, Jr.; Count 8—Linwood Bubar, Jr.; Count 9—Beth Harvey; Count 10—Paul Brown; Count 11—Shane Barr; Count 12—Charles McGreevy, Jr.; Count 13—Vickijean Pelletier.

6. The Justice noted that restraint for the purpose of facilitating flight from prison could have been readily charged and easily proved. Section 301(1)(A)(5). The State agreed that prosecution under that section might have been preferable.

7. 14 N.C.G.S. 39(a)(1) provides as follows:

   "(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of: (1) Holding such other person for ransom or as a *hostage* or using such other person as a shield."

■ The decision in *State v. Crump* emphasized that the demands must be made on a third person. The New Mexico Court held that a definition of "hostage" which embraced "not only demands made by defendant on a third person, but also demands made directly on the victim" was erroneous, and could not sustain a conviction, even though the actions of the accused could have been prosecuted under another section of the kidnapping statute. 484 P.2d at 334. The opinion noted that "the intent to hold the victim as a hostage was not an element of kidnapping at common law," *id.*, and cited several dictionary definitions of "hostage"—all of which dealt solely with the context of international warfare. For example, Black's Law Dictionary (4th ed., 1951) defined hostage as:

"A person who is given into the possession of the enemy, in a public war, his freedom (or life) to stand as security for the performance of some contract or promise made by the belligerent power giving the hostage with the other." (cited in 484 P.2d at 334).

This makes it clear that in the context of the kidnapping statute, the term hostage should refer only to one who is held to enforce demands upon a third person, and should not be expanded to include victims who are restrained to enforce demands made directly on themselves.

Applying the definition from *Crump* to the present case, the Justice below reduced the first charge to criminal restraint, finding no evidence of an intent to hold Frederick Bernard as a hostage. He then cited Bernard's testimony that he was told to buy gas and beer or else Mrs. St. Peter and her daughter, who were being held at their house, would be "hurt," and ruled that the two women could be considered hostages.

■ Littlefield argues that the youths whom he confined in the Barr home for more than two hours were not restrained for the purpose of enforcing demands on a third person, but only to keep them from betraying the presence of the escaped prisoners. The jury might have been persuaded to reach this conclusion, but the evidence would not have precluded them from finding otherwise. The jury had been presented evidence of a continuing course of conduct, aimed at evading police detection, in which the defendant and his accomplice had previously restrained three other people. The St. Peters had already been used to enforce demands on a third person. The jury could reasonably infer from this that when the appellant and his accomplice confined the youths, they did so with the intent to use them as hostages if the need arose, particularly if the police arrived at the Barr house. This possibility is further supported by the fact that when the police arrived later at the home of Mrs. Pelletier, she was held at gunpoint and held against her will in a closet. Littlefield appeared ready then to use her as a shield or a hostage.

■ The trial Justice instructed the jury that

"it is not necessary for the State to prove that anyone actually was used as a shield or hostage, but only that the person was knowingly restrained by the Defendant and at that time it was the intention, the conscious object of the Defendant to use that person restrained as a shield or hostage."

This ruling was consistent with the wording of 17–A M.R.S.A. § 301(1):

"A person is guilty of kidnapping if

. . . .

A. He knowingly restrains another person with the *intent* to [do any act proscribed by subsection A]." (emphasis supplied).

By making the intent to commit one of the specified acts an element of the crime of kidnapping, this wording does not require that the acts be completed. If the initial confinement of the youths was done with the intent to hold them as hostages, the crime was complete, and it does not matter whether the defendant and his accomplice ever actually used them for that purpose, or even that they may have subsequently changed their plans. *Jensen v. Sheriff, White Pine County,* 89 Nev. 123, 508 P.2d 4, 5–6 (1973); *State v. Rosegrant,* 338 Mo.

1153, 93 S.W.2d 961 (1936); *Doss v. State*, 220 Ala. 30, 123 So. 231, 68 A.L.R. 712 (1929). Moreover, when intent is an element of a crime, that intent may be inferred from the circumstances: "the act itself under the existing circumstances may show guilty intention." *State v. Pinnette*, Me., 340 A.2d 17, 21 (1975); *State v. Gagne*, Me., 362 A.2d 166, 174 (1976). Intent can be inferred from evidence of other crimes; in particular, from other crimes which are

> "part of a single set of circumstances, closely related in nature and time, all linked together by a common purpose . . . ."

*State v. Eaton*, Me., 309 A.2d 334, 339 (1973); *State v. Smith*, Me., 277 A.2d 481 (1971).

In conclusion, the record does not support the defendant's argument that the term hostage was applied to actions which did not fall within the proper meaning of that term. The evidence, whether or not susceptible to other interpretations, is sufficient to support the guilty verdict as to each of these charges.

The defendant's final argument, that the verdicts were against the weight of the evidence, is devoid of merit. *State v. Blier*, Me., 371 A.2d 1091 (1977).

The entry is:

Appeal denied.

Judgment affirmed.