**STATE of Maine**

v.

**Maynard BRADLEY.**

Supreme Judicial Court of Maine.

Argued March 18, 1980.
Decided June 2, 1980.

---

John McElwee, Dist. Atty., Brian E. Swales (orally), Asst. Dist. Atty., Houlton, for plaintiff.

Robert F. Ward, Houlton (orally), for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS and GLASSMAN, JJ.

GLASSMAN, Justice.

Three separate indictments were returned against the defendant, Maynard

Bradley, in the Superior Court, Aroostook County. In CR–78–276, the defendant was charged with theft of a firearm, 17–A M.R.S.A. §§ 353, 362(2)(B). In CR–78–278, the defendant was charged with four counts of burglary of a dwelling, 17–A M.R.S.A. § 401, and one count of attempted burglary of a dwelling, 17–A M.R.S.A. §§ 401, 152. In CR–78–279, the defendant was charged with burglary of a dwelling, 17–A M.R.S.A. § 401. Following joinder of all the offenses for trial, the jury convicted the defendant of all seven crimes. On appeal the defendant argues that the presiding Justice committed prejudicial error in granting the State's motion for joinder of the offenses for trial, in denying the defendant's motion that all the offenses be tried separately and in not ordering severance *sua sponte* during trial. The defendant also contends, having properly preserved the claim, that as to each offense the evidence was insufficient to support the conviction.

The State charged that the defendant, along with Charles Scott and Scott's brother, Gerald, had committed the seven offenses in several Aroostook County towns during the period between December 21 and December 25, 1977. Testifying for the State at trial, Charles Scott related a common plan the three men employed in committing the offenses: The defendant would drive an automobile containing the three men to a location near a dwelling house that had been selected for entry in the expectation of finding firearms inside. Charles Scott would leave the vehicle and travel on foot to the house. He would then knock repeatedly on the door of the house prepared to tell anyone who answered that he had car trouble and needed assistance. If no one responded, Scott would enter the house, search primarily for firearms and then return to his companions in the automobile.

Prior to trial, the State moved under M.R.Crim.P. 13 to join the indictments for trial, and the defendant moved under M.R. Crim.P. 14 for a separate trial on each of the offenses. Following a brief non-testimonial hearing, the presiding Justice granted the State's motion as to joinder of the seven offenses for trial and denied the defendant's motion to sever "upon representation by the [S]tate that all offenses constitute parts of a common scheme or plan." He also denied that part of the State's motion which had sought joinder of the indictments pending against Gerald Scott.

## I. Joint Trial on Multiple Offenses

■ The defendant first argues that the presiding Justice erred in ordering the three indictments to be tried together because the seven offenses charged therein could not have been joined in a single indictment. This contention is totally unsupported by the applicable rules of criminal procedure. M.R.Crim.P. 8(a) provides that two or more offenses may be charged as separate counts in the same indictment if the offenses "are of the same or similar character *or* are based on the same act or transaction *or* on two or more acts or transactions which are connected or which constitute parts of a common scheme or plan." *Id.* (emphasis added); *see State v. Gordon*, Me., 321 A.2d 352, 361 (1974) (Rule 8(a) should be read in the disjunctive). M.R.Crim.P. 13 permits the Superior Court to order joinder for trial of offenses in two or more indictments if the offenses "could have been joined in a single indictment . . . ." *Id.* Here, all of the crimes charged not only were of the "same or similar character"[1] but also were connected in time, purpose and *modus operandi*. Because all seven offenses could have been charged in one indictment under M.R.Crim.P. 8(a), joinder of the offenses for trial was permissible under M.R.Crim.P. 13. *State v. Gordon, supra*, 321 A.2d at 361; *cf. Johnson v. United States*, 356 F.2d 680, 682 (8th Cir.), *cert. denied*, 385 U.S. 857, 87 S.Ct. 105, 17 L.Ed.2d 84 (1966); *Chambers v.*

---

1. The counts charging burglary and attempted burglary all alleged that the acts were done with the intent to commit theft.

*United States*, 301 F.2d 564, 565 (D.C.Cir. 1962). *See generally* ABA Standards Relating to Joinder and Severance § 1.1 (Approved Draft, 1968); 1 C. Wright, *Federal Practice & Procedure* §§ 143, 212 (1969).[2]

█ The defendant next contends that even if joinder was permissible the presiding Justice committed reversible error in denying the severance motion because of a substantial likelihood that the jury would be unable to distinguish between the seven offenses and would convict on the basis of cumulative evidence or hostility stemming from the number of offenses charged. *See, e. g., Drew v. United States*, 331 F.2d 85, 88 (D.C.Cir.1964). M.R.Crim.P. 14 authorizes the Superior Court to order separate trials of counts if it appears that the defendant is prejudiced by an otherwise appropriate joinder of offenses. *Id.* It is well settled that " '[t]he grant or denial of a motion for separate trials rests in the trial court's discretion and is reviewable only for abuse.' " *State v. Littlefield*, Me., 389 A.2d 16, 19 (1978), *quoting State v. Bobb*, 138 Me. 242, 255, 25 A.2d 229, 236 (1942).

Our joinder rules promote the efficient administration of criminal justice by avoiding needless repetition of evidence as well as added expense and delay. *E. g., State v. Anderson*, Me., 409 A.2d 1290, 1297 (1979); *State v. Gordon, supra*, 321 A.2d at 361. The presiding Justice denied the motion for severance on the express ground that the offenses were all part of a common scheme or plan. The experienced Justice was unquestionably aware that if he ordered separate trials evidence of the other offenses would be admissible under M.R.Evid. 404(b) to demonstrate a common scheme or plan and, thus, "the possibility of 'criminal propensity' prejudice would be in no way enlarged by the fact of joinder." *Drew v.*

*United States, supra*, 331 F.2d at 90; *e. g., State v. Littlefield, supra*, 389 A.2d at 19; *Crisafi v. United States*, 383 A.2d 1, 3 (D.C. App.), *cert. denied*, 439 U.S. 931, 99 S.Ct. 322, 58 L.Ed.2d 326 (1978). In some egregious case the potential for jury confusion may be so obvious that a presiding Justice would abuse his discretion by refusing to grant a pre-trial motion for severance. Typically, as here, it is not apparent from the nature of the crimes charged or the state of the pleadings that a jury, despite proper instruction, will be unable to treat the evidence relevant to each crime separately and distinctly. *See, e. g., United States v. Lotsch*, 102 F.2d 35, 36 (2d Cir.), *cert. denied*, 307 U.S. 622, 59 S.Ct. 573, 83 L.Ed. 1500 (1939). *See also Drew v. United States, supra*, 331 F.2d at 91–92. The presiding Justice did not abuse his discretion in denying the defendant's motion to sever.

█ The defendant also asserts that the presiding Justice abused his discretion in failing to order severance of the offenses *sua sponte* during trial because the claimed prejudice and confusion became apparent. The defendant predicates his argument on a faulty premise. The principle that a presiding Justice "has a continuing duty to keep a watchful eye over the proceedings in a joint trial and to order a severance when it becomes apparent that the rights of the accused will be prejudiced by the joinder," *State v. Saucier*, Me., 385 A.2d 44, 46 (1978), applies in the peculiar context of a joint trial of multiple defendants where limiting instructions are often inefficacious. *See, e. g., State v. Anderson, supra*, 409 A.2d at 1297 n.5; *State v. Elwell*, Me., 380 A.2d 1016, 1019–20 (1977); *State v. Cuddy*, Me., 366 A.2d 858, 860 (1976). *See also Schaffer v. United States*, 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed.2d 921 (1960). We have never held this principle applicable to a trial

**2.** Under the ABA Standards Relating to Joinder and Severance, a defendant has an absolute right to a severance of the offenses when the only basis for joinder is that the offenses are of the same or similar character. ABA Standards Relating to Joinder and Severance § 2.2(a) (Ap-

proved Draft, 1968). This provision differs from Rule 14 of the Maine and federal criminal rules and, in any event, is irrelevant to the instant case because joinder of the offenses against the defendant for trial was not based solely on the similarity of the crimes charged.

of a single defendant on multiple offenses. If the defendant believed that prejudice from the joinder of offenses arose during the course of his trial and that such prejudice could not be cured through appropriate instructions, his remedy was to move for a mistrial, particularizing his grounds therefor. Not having called to the attention of the presiding Justice the prejudice and confusion which he now contends unfolded, the defendant has waived any claim of error. Cf. *United States v. Kaplan*, 554 F.2d 958, 965–66 (9th Cir.) (per curiam), *cert. denied*, 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977); *Finnegan v. United States*, 204 F.2d 105, 109 (8th Cir.), *cert. denied*, 346 U.S. 821, 74 S.Ct. 36, 98 L.Ed. 347 (1953); *State v. Mathias*, 57 Haw. 96, 99, 550 P.2d 900, 903 (1976). See also ABA Standards Relating to Joinder and Severance § 2.1(b) (Approved Draft, 1968); 8 Moore's *Federal Practice* ¶ 14.02[2] (2d ed. 1975).[3]

## II. Sufficiency of the Evidence

At trial the defendant stipulated that Charles Scott committed each of the offenses alleged in the three indictments but denied any involvement in the commission of the seven crimes. The issue on which the State was put to proof, therefore, was whether the defendant was an accomplice of Scott in the commission of these crimes. See 17–A M.R.S.A. § 57(3)(A).

 The State produced Charles Scott to establish that the defendant was a participant in all the crimes charged. In his argument that the evidence of participation was insufficient to support the convictions, the defendant only attacks Scott's credibility. Although it is clear that the credibility of Scott and the weight to be given his testimony were matters for the jury, *see, e. g., State v. Flaherty*, Me., 394 A.2d 1176,

1177 (1978), the record reveals that Scott's testimony was insufficient to enable the State to discharge its burden as to three of the crimes charged.

Scott testified as to the participation of the defendant in the attempted burglary at the Porter dwelling and in the burglaries at the Applebee, Jewell and Lovely dwellings. Other evidence in the case also implicated the defendant in the attempted burglary. This evidence was sufficient to enable the jury rationally to find beyond a reasonable doubt that the defendant was an accomplice of Scott in the commission of these four crimes. We therefore affirm the convictions for the Porter attempted burglary and for the Applebee, Jewell and Lovely burglaries.

Scott's descriptions of the other three offenses charged, and consequently the defendant's complicity in these crimes, were either so confused or sketchy that on the basis of this testimony " 'no rational trier of fact could [find] proof of guilt beyond a reasonable doubt,' " *State v. Lagasse*, Me., 410 A.2d 537, 542 (1980), *quoting Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979), as to the burglary and theft at the Gentle dwelling and the burglary at the Hogan dwelling.[4] The deficiencies in Scott's testimony were not cured by the other evidence presented at trial, and, therefore, the defendant's convictions for the Gentle theft and burglary and for the Hogan burglary must be set aside. Furthermore, because double jeopardy bars the retrial of a defendant whose conviction is reversed solely on the ground of insufficient evidence, *Greene v. Massey*, 437 U.S. 19, 24, 98 S.Ct. 2151, 2154, 57 L.Ed.2d 15 (1978); *Burks v. United States*, 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978), we direct entry of judgment of acquittal on each of these three charges.

3. We find it unnecessary to review this matter under the standard of M.R.Crim.P. 52(b) because to the extent that substantial rights of the defendant were affected we dispose of such claims in Part II of this opinion.

4. The prosecutor devoted his attention to repeated unsuccessful efforts to introduce irrelevant and inflammatory evidence. Presumably, his concentration on this improper trial tactic diverted the prosecutor's attention from proving the offenses charged.

The presiding Justice made clear his intention to impose seven separate three-year sentences, all to run concurrently, stating:

[I]t is ordered that the Defendant be sent to the Maine State Prison for a period of three years *on each of the seven charges.* The period [sic] of imprisonment to be served concurrently. (Emphasis added).

Unfortunately, the judgments as signed and entered reflected concurrent three-year sentences on each indictment rather than a separate sentence as to each count of the multiple-count indictment. In light of the clear expression of the intention of the presiding Justice, we deem this a clerical error subject to correction pursuant to M.R. Crim.P. 36. In any event, if there is a discrepancy between the oral pronouncement of sentence and the written judgment, the oral pronouncement controls. *Cuozzo v. United States,* 340 F.2d 303, 304 (5th Cir. 1965) (per curiam).

The entry is:

(1) In CR–78–276, judgment vacated and the clerk is directed to enter judgment of acquittal.

(2) In CR–78–278, judgment vacated as to Counts III and IV and the clerk is directed to enter judgment of acquittal as to those counts; as to Counts I, II and V, judgment affirmed and these counts are remanded for correction of judgment to reflect a sentence of three years in the Maine State Prison on each of said counts.

(3) In CR–78–279, judgment affirmed.

All concurring.