STATE of Maine

v.

Constance DOODY.

Supreme Judicial Court of Maine.

Argued June 18, 1981.

Decided Sept. 11, 1981.

Anita St. Onge (orally), Wayne S. Moss, Charles K. Leadbetter, Asst. Attys. Gen., Augusta, for plaintiff.

Bither & Goodwin, Thomas L. Goodwin (orally), Houlton, for defendant.

Before WERNICK *, GODFREY, NICHOLS, ROBERTS and CARTER, JJ.

GODFREY, Justice.

The defendant, Constance Doody, lived with her husband, Michael Doody, in Caribou. Their relationship with Norma Bennett, Constance's mother, was dominated by frustration, anger, and hatred. On the night of October 7, 1979, Norma Bennett was shot and killed at her trailer home. Constance was not present at the scene, but Michael was. About two hours later, local police arrested Michael for murder, a crime of which he was later convicted. On July 25, 1980, Constance Doody was charged in a two-count indictment for soliciting the murder, 17–A M.R.S.A. § 153 (1980), and for the murder itself on a theory of accomplice liability, 17–A M.R.S.A. §§ 57, 201 (1980).

The solicitation count was based on the State's evidence that about two weeks before the murder, in a local bar with Michael present, Constance offered $300 to William Fitzherbert, a man both she and her husband knew, if Fitzherbert would kill her mother. The count for murder was based on a series of episodes, including the incident with Fitzherbert, before and after the murder which the State argues established her complicity in the crime committed by Michael. After the Superior Court denied her motion for a separate trial on each count, M.R.Crim.P. 14,[1] Constance waived her right to trial by jury.

Doody appeals from the judgment of the Superior Court holding her guilty as charged, both of solicitation of murder and of murder as an accomplice. On this appeal, Doody argues that the Superior Court abused its discretion in denying her Rule 14 motion for separate trial of the counts and challenges the sufficiency of the evidence to support the judgment on each count. We affirm the judgment on both counts.

## I. Separate Trial of the Counts

■ An order of the Superior Court in response to a Rule 14 motion is subject to review on appeal only for abuse of discretion. *State v. Bradley*, Me., 414 A.2d 1236, 1239 (1980); *State v. Littlefield*, Me., 389 A.2d 16, 19 (1978).[2] Appellant argues that the presiding justice abused his discretion for two reasons. First, she contends that evidence of Norma Bennett's death was irrelevant to the solicitation charge and would have been inadmissible in a separate trial for solicitation. Second, she contends that even if evidence of Norma Bennett's death was relevant, it would have been excludible in a trial for solicitation alone because of its potential for unfair prejudice.

■ Maine Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence is generally admissible. M.R.Evid. 402.[3] Moreover,

---

* Wernick, J., sat at oral argument and in the initial conference but retired prior to adoption of this opinion.

1. Maine Rule of Criminal Procedure 14 provides as follows:

   If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

2. A multi-count indictment for, and joint trial of, separate crimes is permissible if, *inter alia*, "the offenses charged ... are ... based on ... two or more acts ... which are connected ..." M.R.Crim.P. 8(a). The appellant does not challenge the State's compliance with Rule 8(a). *See* 8 J. Moore, *Federal Practice* § 14.02[1] (2d ed.1980).

3. Rule 402 provides:

M.R.Evid. 404(b)[4] does not exclude evidence of other crimes where such evidence is relevant to proof of the defendant's intent, *State v. Littlefield, supra,* at 19.[5]

The provisions of 17–A M.R.S.A. § 153(1) are as follows:

> A person is guilty of solicitation if he commands or attempts to induce another person to commit murder or a particular Class A or Class B crime, whether as principal or accomplice, with the intent to cause the commission of the crime, and under circumstances which the actor believes make it probable that the crime will take place.

Under those provisions, the State was required to prove that the defendant attempted to induce Fitzherbert to murder Norma Bennett, that she intended thereby to cause the commission of the crime, and that she solicited Fitzherbert in circumstances which she believed made it probable that the crime would take place. The fact that Norma was ultimately murdered by a participant in the conversation in which Constance made her offer to Fitzherbert was one circumstance of this case that could be rationally perceived as tending to show that Constance's offer was not made lightly or in jest and was not so understood by those present. That circumstance was at least some evidence that she meant seriously what she said and that the others knew it; in other words, that she had the intent to cause the commission of the crime.

If any evidence should be produced at trial tending to show complicity by Constance Doody in the ultimate murder of her mother by Michael Doody, that evidence would also be relevant to whether Constance really intended by her offer to induce Fitzherbert to kill Norma Bennett.

Because evidence of the circumstances leading up to the murder might be thus relevant to appellant's intent under the solicitation charge and therefore possibly admissible in a separate trial on the solicitation count alone, the Superior Court's denial of the motion for separate trials cannot be deemed an abuse of discretion on the ground that the evidence was certain to be irrelevant. *State v. Bradley, supra* at 1239 (1980); *State v. Littlefield, supra* at 19 (1978).

Nor can we conclude that admission of the evidence relating to the murder of Norma Bennett would have obviously been unfairly prejudicial under M.R.Evid. 403. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Appellant's principal concern seems to be that the factfinder was seriously prejudiced in assessing her conduct with reference to the solicitation charge by evidence that the murder occurred—even though the fact that the crime actually occurs is not an element of criminal solicitation under section 153. As noted above, however, from the trial justice's point of view as he weighed the motion to sever, evidence tending to show appellant's complicity in the murder itself could turn out to be relevant to at least one element of the solicitation offense. Accordingly, denial of the motion to sever was not an abuse of discretion merely because possibly forthcoming evidence tending to show that appellant was an accomplice in the murder might tend to

---

All relevant evidence is admissible, except as limited by constitutional requirements or as otherwise provided by statute or by these rules or by other rules applicable in the courts of this state. Evidence which is not relevant is not admissible.

4. M.R.Evid. 404(b) provides:
(b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in

order to show that he acted in conformity therewith.

5. Or relevant to proof of a common scheme or plan, *State v. Bradley,* Me., 414 A.2d 1236, 1239 (1980). *Cf. Drew v. United States,* 331 F.2d 85, 90 (D.C. Cir. 1964) (refusal to order separate trials of counts for a robbery and a later attempted robbery, *held* abuse of discretion in the particular circumstances).

establish an element of the crime of solicitation. *State v. Barker,* Me., 387 A.2d 14, 21 (1978); *State v. Littlefield, supra* at 19 (1974).

■ Some risk of confusion of the factfinder may be present in any case where somewhat similar offenses are prosecuted in one proceeding. *See generally Drew v. United States, supra,* note 5, at 90–92. But some similarity in the offenses prosecuted is inevitable in any trial on multiple counts inasmuch as such a trial is provided for by M.R.Crim.P. 8 in those very cases where the offenses charged "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions which are connected or which constitute parts of a common scheme or plan." As our opinion in *State v. Bradley, supra* at 1239, shows, the trial justice has considerable discretion, on a motion for separate trials of multiple charges, to determine whether severance is necessary in the interest of avoiding prejudice and confusion of issues. This Court will not reverse the trial justice's decision to deny the motion unless the case is one in which the potential for confusion or prejudice is obviously serious.

In the instant case, when the motion for severance was under consideration, it was not apparent from the nature of the two crimes charged or the state of the pleadings that a factfinder would be unable, despite proper instruction, "to treat the evidence relevant to each crime separately and distinctly." *State v. Bradley, supra* at 1239. The gravamen of each count was factually distinct: Constance's offer to Fitzherbert was separated in time and place from the ultimate murder of Norma Bennett two weeks later. The Superior Court did not abuse its discretion in denying Constance Doody's motion for relief from prejudicial joinder under Rule 14.

II. *Sufficiency of Evidence of Solicitation*

Appellant challenges the sufficiency of the evidence supporting one element of the solicitation conviction. Unquestionably, sufficient evidence exists to support the Superior Court's finding that Constance Doody ostensibly attempted to induce William Fitzherbert to kill her mother by offering him $300. She argues, however, that the evidence was insufficient to support findings that she thereby intended to cause the commission of the murder or that her attempt was made under circumstances which she believed made it probable that the crime would take place. The offer to Fitzherbert was made in the course of conversation at a local bar among the defendant, her husband, and Fitzherbert. Appellant contends that the record reveals only that the offer was casual barroom talk induced by a history of dislike for Norma Bennett and that neither the relationship among the people privy to that conversation nor the context in which the offer was made tended to show that she really meant to cause the commission of the crime or that she believed the circumstances made it probable that the crime would take place.

In reviewing the sufficiency of the evidence to support the finding appellant challenges, we must determine whether, on our examination of the evidence relevant to that finding in the light most favorable to the State, the factfinder could have reasonably found, beyond a reasonable doubt, that appellant's offer to Fitzherbert to pay him $300 to kill her mother was made with the intent to cause the commission of the crime and under circumstances which appellant believed made it probable that the crime would take place. *See State v. Perfetto,* Me., 424 A.2d 1095, 1097 (1981); *State v. Lagasse,* Me., 410 A.2d 537, 542 (1980).

■ Viewed in a light most favorable to the State, the following evidence supports the trial court's determination of guilt: Fitzherbert and a detective who investigated the crime testified that Constance offered $300 to Fitzherbert if he would kill Norma Bennett, and that although Fitzherbert replied he would not murder Norma himself he could find someone who would. Constance specified that the murder would have to take place within two weeks in order to avert a court action Constance claimed Norma intended to initiate against her. Fitzherbert told Constance that he

could find someone because he knew many "crazy people." He also told her he had broken many laws himself in the past, a statement from which the court could have inferred that Constance believed Fitzherbert might be willing to accept her offer. Constance assured Fitzherbert that she could pay the $300 because she was expecting a large sum of money from her father's estate. Constance received a check for $1,400 about a week later. Evidence in the record supports an inference that Constance Doody was not intoxicated when she discussed her offer with Fitzherbert. The seriousness with which both Constance and Michael Doody regarded the offer was confirmed by other comments made during the conversation indicating their hatred for Norma and by Michael's observation that if Fitzherbert did not find someone to kill Norma, he, Michael, would have to do it himself. We cannot conclude, given the details of the conversation, including the absence of an explicit refusal on Fitzherbert's part to find someone to do the crime, that the trial court erred in finding that appellant intended to cause the crime to be committed and that the circumstances were such that she believed her offer would probably lead to commission of the crime.

III. *Sufficiency of Evidence of Complicity*

Appellant contends that the evidence was insufficient to support the conviction for accomplice murder pursuant to 17–A M.R.S.A. § 57 and § 201. According to section 57, subsection (1), a "person may be guilty of a crime if it is committed by the conduct of another person for which he is legally accountable ..." Subsection 2 provides that a person is legally accountable for the conduct of another person when he is an accomplice. Subsection 3, in turn, provides, in pertinent part, as follows:

A person is an accomplice of another person in the commission of a crime if:
A. With the intent of promoting or facilitating the commission of the crime, he solicits such other person to commit the crime, or aids or agrees to aid or attempts to aid such other person in planning or committing the crime. A person is an

accomplice under this subsection to any crime the commission of which was a reasonably foreseeable consequence of his conduct ....

17–A M.R.S.A. § 57(3)(A) (Supp.1980).

■ At the time of announcing his decision finding appellant guilty of murder as an accomplice, the trial justice made several comments about the case, remarking, *inter alia*, that "the testimony demonstrates at least condonation on the part of the defendant, and her behavior with Michael Doody throughout this period demonstrates encouragement, if not outright solicitation." The trial justice was not requested to "find the facts specially" under M.R.Crim.P. 23(c), and his comments at the time of decision did not amount to such special findings. This Court, on appeal, must determine the question of sufficiency of the evidence to support the conviction by a review of *all* the evidence relevant to the trial court's ultimate conclusion of guilt.

Appellant contends that there was no evidence at all indicating that she affirmatively solicited Michael Doody to murder Norma Bennett or that she aided or agreed to aid Michael in planning or committing the crime. Our review of the sufficiency of the evidence of complicity proceeds on the basis that the Superior Court's finding will be sustained if on all the evidence viewed in a light most favorable to the State, the factfinder could have rationally found beyond a reasonable doubt that the appellant, with the intent of promoting or facilitating the commission of the crime, (1) solicited Michael Doody to murder her mother, or (2) aided or agreed to aid him in planning or committing the crime, or (3) attempted to aid him in planning or committing the crime.

In the light most favorable to the State, the evidence would have supported the following findings of fact in addition to the circumstances, described above, of the meeting of Constance, Michael and Fitzherbert at the Sportsmen's Tavern in Caribou: On October 6, 1979, Norma Bennett visited Constance and accused Constance's daugh-

ter, Kelly, of lying about the conduct of another member of the family. Constance and Norma argued with each other. After the argument, Constance met Larry Doody, Michael's brother, and asked him if he knew anyone who might get rid of Norma for her. Later that same day, Constance, Michael, William Fitzherbert, and Larry Doody drove together to a junkyard to purchase a pickup truck for Michael. During that drive, Michael mentioned that he was going to attend a party at Fitzherbert's that evening. Constance asked whether she was invited and Michael replied, "Look, God damn it, you [Constance] did not want to know when it was going down," then reached over and opened the glove compartment of the car, revealing a box of bullets. According to the testimony of Fitzherbert, who was a passenger in the car at the time, Constance replied that she understood and added, "I won't give you any problem". Fitzherbert testified that appellant then said she would take the babysitter home and take a chance on driving the old Chevrolet car that was not registered.

Still viewed most favorably to the State, the evidence of record would support a finding that Constance and Michael spent most of the remainder of October 6 together. After the truck was purchased, Michael told Constance he was going to blow the windows out of Norma's car and perhaps kill Norma that evening by ambushing her when she drove by him in her automobile. Michael related that and other schemes to Constance several times on that day.

Michael did nothing to Norma on the evening of October 6. Instead, he and Constance went drinking together at the Caribou Hotel and spent the evening together. On the following day, Michael and Constance got a babysitter for the children and went to the Sportsmen's Tavern. At the tavern, Constance told Michael about Norma's visit on October 6. Michael left the tavern and went to Norma's trailer where he cut the telephone wires.

Michael returned to the tavern and told Constance what he had done. The couple discussed Norma, separated briefly, and met again later that evening at the Caribou Hotel. At about 9:30 p. m., they returned to Constance's house. Constance went inside and sent the babysitter out to the truck where Michael had fallen asleep while waiting to take her home. Michael drove the sitter home, then went to Norma Bennett's trailer, shot Norma, and returned to Constance's house.

On arriving there, he told Constance he had shot Norma, asked for and received twenty dollars from Constance to get out of town, and disconnected the house telephone. After Michael left the house, Constance sent her daughter Kelly to find a certain neighbor and ask him to reconnect the telephone. The neighbor connected the telephone. While doing so, he observed that Constance was nervous and he heard her mumble to herself about calling the police. After the telephone was connected, Constance called her ex-husband to discuss the problems she was having with Norma, but she did not tell him that Michael had shot Norma. The ex-husband spoke with his daughter Kelly for about forty-five minutes because she was upset about her grandmother's accusation that she had lied. Later that evening the police came to Constance's house looking for Michael.[6] Constance did not tell them Michael had been there or what he had told her, but she did tell them where they might find him.

The evidence was sufficient under the Maine Criminal Code to support the trial court's conclusion that beyond a reasonable doubt appellant was an accomplice in the murder. The trial justice could have reasonably inferred an intent on appellant's part to "promote or facilitate" the crime. Her offer, in Michael's presence several days before the murder, to pay Fitzherbert for killing her mother was evidence of a desire on her part that the murder be committed, even though that offer by itself was

---

6. From the evidence it appears that Michael, though married to Constance, did not reside at her house.

not proof that she solicited Michael to do the act personally. Even more probative of her "intent of promoting or facilitating the commission of the crime" was the testimony that she told Michael on October 6 that she would not "give him any problem" when he showed her the bullets in the glove compartment and told her she was not invited to the Fitzherbert party because she did not "want to know when it was going down."

The response attributed to Constance, "I won't give you any problem," could be reasonably found by the trial court to imply an assurance to Michael that she would not interfere with his plans and that she approved of the proposed crime. By engaging not to interfere with his plans whatever they might be, she went beyond mere condonation or passive acquiescence, neither of which alone, generally speaking, would give rise to accomplice liability. W. LaFave & A. W. Scott, Jr., *Criminal Law* § 64, at 503 (1972); 1 F. Wharton, *Criminal Law & Procedure* § 110, at 237 (Anderson ed.1957). According to Fitzherbert's testimony, appellant's assurance of non-interference was coupled with a remark that she would take the babysitter home in her own car even though it was not registered. In the circumstances, the trier of fact could reasonably interpret her remark as an offer of aid to Michael in his planning for the crime: in effect, she told him he could count on the availability of his own car for execution of his plans.

■ Believing that evidence and drawing rational inferences from it, the trial court could have reasonably concluded (1) that Constance affirmatively assured Michael that she acquiesced in the proposed killing and that he could count on her non-intervention, and (2) that she was willing to do an act having the effect of facilitating the execution of the crime. On this view of the evidence, her conduct went beyond mere condonation and made her an accomplice under section 57 on the basis that, with intent to facilitate commission of the crime, she had aided or agreed to aid Michael in planning or committing it.

■ Michael did not kill Norma on October 6 as he had said or implied he would. Appellant contends that the evidence does not support a conclusion that any complicity she could be found to have had in Michael's plan for the night of October 6 persisted until the murder on the night of October 7 or had any tendency to affect commission of the homicide as it actually occurred. Testifying in her own defense, appellant gave testimony to show that she believed Michael was going to his own apartment after taking the babysitter home.

Subsection 5 of 17–A M.R.S.A. § 57 provides, in pertinent part, as follows:

5. Unless otherwise expressly provided, a person is not an accomplice in a crime committed by another person if:

. . . . .

C. He terminates his complicity prior to the commission of the crime by

(1) informing his accomplice that he has abandoned his criminal activity and

(2) leaving the scene of the prospective crime, if he is present thereat.

Inasmuch as appellant's testimony at trial had been that she never encouraged her husband to kill her mother, she could not and did not testify that she ever informed Michael that she had "abandoned her criminal activity." Nevertheless, the trial justice, in his remarks at the time of announcing his decision, weighed the possibility that, by her conduct toward Michael on October 7, appellant may have manifested an intent to abandon the enterprise. The trial justice's conclusion, that her conduct did not manifest such an abandonment, has rational support in the evidence, particularly from the testimony showing appellant's studied delay, after Michael returned with news of the shooting, in summoning aid for her mother in case she might still be alive.

The fact that the crime did not occur exactly at the time and in the manner Michael planned it on October 6 did not relieve appellant of accomplice liability. 1 F. Wharton, *supra*, § 110, at 238. The time and manner of commission of the murder conformed to the October 6 plan closely

enough to support a rational inference by the trial justice that the plan was still being followed in its essentials, and that there was a direct causal connection between appellant's complicity and Michael's ultimate act. *See* 17–A M.R.S.A. § 56. Finally, it is immaterial that, in the course of actually committing the crime, Michael did not have occasion to avail himself of appellant's proffered aid. 1 F. Wharton, *supra*, § 110, at 238.

The entry is:

Judgment affirmed.

All concurring.