**STATE of Maine**

v.

**Duane LAKIN.**

Supreme Judicial Court of Maine.

Argued Nov. 19, 1987.

Decided Feb. 5, 1988.

Paul Aranson, Dist. Atty., Edward Liggins (orally), Asst. Dist. Atty., Portland, for plaintiff.

Thomas J. Connolly (orally), Portland, for defendant.

Before NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

NICHOLS, Justice.

The Defendant, Duane Lakin, appeals his conviction by jury trial in Superior Court (Cumberland County) for escape, gross sexual misconduct, rape and assault. The Defendant asserts that the "official permission" element of the escape charge was improperly submitted to the jury, and he contends that joinder for trial of the indictment for escape with another indictment charging sexual misconduct in two separate encounters was unduly prejudicial. The State had moved successfully to join the two indictments for trial.

The Defendant's version of the events leading to his alleged escape from the Cumberland County Jail was presented to the jury through his own testimony and through the testimony of a fellow prisoner.[1] The two prisoners testified that the deputy sheriff in charge of jail security in the evenings granted them special privileges, including allowing the Defendant to have alcoholic beverages delivered into the county jail to them. According to the testimony this deputy sheriff was the only officer to allow such privileges, and he granted them only to these two prisoners.

Early in the morning of September 8, 1986, the Defendant arranged to have beer delivered to him in the jail. After consuming the beer the Defendant asked the deputy sheriff if he could leave the jail. That officer replied that he would allow the Defendant to leave if he returned in a couple of hours. The deputy sheriff then opened the door and let the Defendant out.

The Defendant further testified that after he left the county jail, he took a taxi to a friend's home and there fell asleep until the following morning. The Defendant then telephoned the jail and, admitting that he had made a mistake, stated that he would only give himself up to the Cumberland County sheriff. The Defendant's surrender was not finally negotiated until October 19, 1986. As a result of such events, the Defendant was indicted for escape pursuant to 17-A M.R.S.A. § 755(1) (1983).

With reference to the charges set forth in the other indictment, a Ms. G. testified that on the late evening of September 19, 1986, she entered Ricky's Tavern, in Portland, and after a brief conversation there with the Defendant, whom she had not previously known, she left the bar alone. The Defendant followed Ms. G. outside, grabbed her from behind, and dragged her into a nearby alleyway. The Defendant hit the woman several times while he forced her to the ground. It was there that the Defendant sexually assaulted her. When Ms. G. escaped from him, she waved down a passing car. She was taken to the hospital and the police were notified of the attack upon her.

The Defendant's testimony differed significantly. He claimed that after he met Ms. G. at Ricky's Tavern she accompanied him to a nearby alleyway where the two engaged voluntarily in sexual intercourse. The Defendant testified that the woman then requested money and when he refused, she reacted violently. In self-defense, he pushed her away and hit her in the mouth, causing her mouth and nose to bleed. The Defendant claimed to have then left the alleyway. As a result of these events, the Defendant was indicted for gross sexual misconduct pursuant to 17-A M.R.S.A. § 253 (Supp.1987) and rape under 17-A M.R.S.A. § 252 (Supp.1987).

Another witness, Ms. D., testified that around midnight on that same night, she encountered the Defendant while walking in the vicinity of the alleyway where Ms. G. had encountered the Defendant. Ms. D., recognizing the Defendant as a Lakin, spoke to him briefly in the street. When the Defendant offered to walk Ms. D. home, she refused. He then followed her, grabbed her around the neck and pulled her into an alleyway. There he pinned her

---

1. In July, 1986, the Defendant, then serving a four-year prison term, had been transferred from the Maine State Prison to the Cumberland County Jail.

up against a car, attempting to pull her skirt up. The Defendant choked the woman and told her not to scream. Ms. D. freed herself and ran home. She immediately called the police to report this encounter.

The Defendant denied ever attacking Ms. D. He claimed that after he left the alley where he had been with Ms. G., he met Ms. D. as he rounded the corner. He talked with Ms. D. for approximately five minutes, during which time he did not touch her. Based on Ms. D.'s testimony, the Defendant was indicted for attempted rape and assault of Ms. D. in violation of 17–A M.R.S.A. §§ 152, 252 and 207 (1983 & Supp.1987).

The jury found the Defendant guilty of escape. With reference to Ms. G.'s allegations, the jury found him guilty of gross sexual misconduct and rape. The jury further found the Defendant guilty of assault in the incident involving Ms. D.

We affirm the judgment on all counts.

■ The facts surrounding the Defendant's alleged escape from jail are undisputed. The sole unresolved question on this count was whether the Defendant obtained "official permission" within the meaning of 17–A M.R.S.A. § 755(1) (1983)[2] to leave the jail. Whether the deputy sheriff could give the Defendant "official permission" to leave the jail was a question of law for the court.[3] The term "official permission" implies permission granted by an individual empowered to authorize releases and furloughs. Title 34–A M.R.S.A. § 3035(2) (Pamph.1986) specifies that the only officer authorized to grant a committed offender furlough from the facility in which he is confined is the Commissioner of Corrections. While this deputy sheriff could permit a prisoner to go outside to perform minor duties, such as disposing of garbage, he in no way was authorized to act for the Commissioner of Corrections. Because, as a matter of law, the deputy sheriff could not give "official permission" to the Defendant to leave the county jail, it was harmless error for the trial court to submit to the jury as a question of fact whether the Defendant had "official permission" to leave the jail.

■ Furthermore, the Defendant acknowledged that he was intimately familiar with the proper prison procedures for obtaining extended leave. He also testified that he had a working knowledge of the rules of the State prison system, including the rules of the furlough and work-release programs. Moreover, the Defendant testified that he knew it was wrong for the deputy sheriff to allow him to leave the county jail. Consequently, there was no apparent authority in the deputy sheriff. We, therefore, affirm the conviction for escape.

■ The Defendant also asserts that the joinder for trial of the indictment charging two incidents of the separate sexual misconduct was unduly prejudicial, requiring reversal of his conviction.[4] We review the denial of a motion for separate trials only to determine if there was an abuse of discretion. *State v. Bradley*, 414 A.2d 1236, 1239 (Me.1980); *State v. Littlefield*, 389 A.2d 16, 19 (Me.1978). Only in an egregious case, where the potential for confusion of the jury is obvious, might we conclude that there has been an abuse of discretion. *State v. Bradley*, 414 A.2d at 1239.

■ In the case before us, the evidence relating to each count was presented clearly and was easily distinguishable by the

---

**2.** 17–A M.R.S.A. § 755(1) (1983) provides in pertinent part:

*Escape*

1. A person is guilty of escape if, without official permission, he intentionally leaves official custody, or intentionally fails to return to official custody

**3.** *See Lakes Environmental Ass'n v. Town of Naples*, 486 A.2d 91 (Me.1984); *Farris ex rel. Dorsky v. Goss*, 143 Me. 227, 60 A.2d 908 (1948).

**4.** On appeal, the Defendant argues for the first time that he was unfairly prejudiced by the joinder of the escape offense with the two sex charges. We find, however, that allowing such a joinder was not so unduly prejudicial as to amount to obvious error. *See State v. Dunn*, 480 A.2d 788, 790 (Me.1984); *State v. Pomerleau*, 363 A.2d 692, 696 (Me.1976).

jury. Furthermore, even if the Superior Court had ordered separate trials, the evidence of the first sexual encounter would have been admissible under M.R.Evid. 404(b) in a trial of the counts relating to the second sexual encounter as evidence of a common scheme, plan or method. Thus, the joinder of offenses was not more prejudicial to the Defendant than if the court had granted separate trials for the counts arising out of the two encounters. *State v. Littlefield*, 389 A.2d at 19.

The entry is:

Judgment affirmed.

All concurring.